JOHN PIQUEGNO v. CHICAGO & GRAND TRUNK RAILWAY CO.

*Railway negligence—Ice and snow alongside track.*

1. A railroad company is not negligent in omitting to clear snow and ice from the ground alongside its track even in the neighborhood of depot platforms ; and a brakeman who is injured in consequence of slipping on it has no remedy against the company.

2. A sudden call to supper, addressed by a conductor to a brakeman, is not such an improper or negligent command that the brakeman can recover for any injury sustained in hastily obeying it.

3. Whoever hires out for any service takes the risks of it.

Error to St. Clair. (Stevens, J.) Oct. 25.—Oct. 31.

CASE. Plaintiff brings error. Affirmed.

*Atkinson & Stevenson* for appellant. A railroad company must provide a reasonably safe place for its employees to work in or give them notice of defects: *Swoboda v. Ward* 40 Mich. 420 ; *Snow v. Housatonic R. R.* 8 Allen 441 ; *Plank v. N. Y. C. & H. R. R. Co.* 1 Thomp. & C. 319; *Lewis v. St. L. & I. M. R. R. Co.* 59 Mo. 495 ; *Batterson v. Chic. & G. T. Ry* 49 Mich. 184 ; *Coombs v. New Bedford Cordage Co.* 102 Mass. 572.

*E. W. Meddaugh* and *Wm. T. Mitchell* for appellee.

COOLEY, J. Action for injury to the person. The declaration alleges that on February 8, 1881, plaintiff was in the employ of defendant as a brakeman on a freight train running from Port Huron to Valparaiso, Indiana, through the city of Flint, and that defendant " did not carefully, skillfully and without negligence run its trains over said road, and did not keep such road and all its appurtenances in good, safe and proper condition, and did not keep its station grounds and platforms, at the city of Flint aforesaid, free from ice, snow and other matter dangerous to the safety of persons employed on said road,

and did not on the day aforesaid and at the place aforesaid provide its engine, then used in making up trains and moving the van which the plaintiff was at work upon, with a skillful and competent engineer, but in all the matters aforesaid neglected its duty in the premises and operated its engine by a fireman who had neither skill, experience nor capacity for such work, and suffered its station grounds, track and platform to become covered with slippery ice and snow, and the space from the track to the platform was obstructed with dangerous snow-heaps so that the whole track, platform and premises, at the place aforesaid were in an unsafe and dangerous condition through the negligence of the said defendant: By means whereof the plaintiff, while performing his duties as brakeman with all due care and diligence on his part, and in consequence of such negligence and default of the defendant, was thrown with great force and violence from the van upon which he was riding, onto the platform aforesaid, and by reason of the ice and snow thereon was carried and thrown from such platform over the ice and snow bank aforesaid against the defendant's track, on the line of its road, and by reason of the negligence and unskillfulness of the fireman aforesaid, while so lying near the track, was run upon by an engine of the defendant, and his left arm broken and mangled," etc.

On the trial the plaintiff showed that at the time and place named his arm was run upon and broken and mangled by an engine as alleged, but there was no evidence whatever that any negligence or unskillfulness in the fireman was in any manner concerned in the injury, and it was testified by himself that he voluntarily jumped from the van, and was not thrown from it as he had alleged. His account of the accident is in substance this: The train was manned by one Strickland as conductor and one Flynn and himself as brakemen. It was at Flint, where it had just arrived from Battle Creek. He set the brakes and stopped the train, and then went into the van to put away the flags and get ready for supper. Within four or five minutes the conductor came in and told them they had to go right back to Battle Creek, and they must hurry as quick as they could and get supper. In a minute or two they coupled on behind the caboose and turned away out on the switch, backing towards the west switch near Saginaw street. They then

started and went east towards the station. Plaintiff then had his clothes off, preparing for supper. The conductor hallooed to him to get off and get his supper, and Flynn said they had better go or they would get left, so he hurried on his clothes, and as he proceeds to say :

"I got off and run probably two or three steps, probably three or four—I don't know how much exactly—and I struck some ice that had been left there from where they had probably been cleaning, and I slipped towards the track and glanced off slanting towards the rail. When I struck the old ice and snow I laid on my back, and something struck my left shoulder; I couldn't say whether the box of the journal, or the cylinder of the engine, and shoved me probably eight feet forward, till my feet reached where it was a little low, and I couldn't hold myself any longer, and my back lay on a bank of snow slanting towards the track, and I slid down between the two, and laid in that shape to protect myself as well as I could. My left arm was run over. I got up after the engine passed, and looked on the ground, and I saw from where I first slipped that there was no ice—probably might have been a little ice—and saw where I slipped, probably a foot and a half or two feet, where there was some old snow left there, the cause of my slipping. This was on the platform. The size of the piece of old snow or ice on the platform was three or four feet wide, and maybe the length of eight feet. It was not where I first struck the platform. If I hadn't struck the old ice I would have been all right. As I ran ahead, not being able to stop short, I struck this piece of old ice and slipped off from the platform, slanting towards the track. The bank of old ice and snow piled up along the way, more or less, nearly level with the platform, slanting towards the track from the platform, caused me to slide down to the rail. This occurred a little after five o'clock : it wasn't dark, but cloudy."

This being the statement of the plaintiff himself we may assume was the strongest statement of negligence against the defendant that could truthfully have been made. The circuit judge was of opinion that it made out no cause of action and so instructed the jury. The only question before us is whether there was error in this conclusion.

The gravamen of the plaintiff's complaint is that the de-

fendant has been guilty of negligence to his injury. The only negligence which the evidence tends to establish consists in the failure to keep the ground along by its track, at the place where the injury occurred, free from snow and ice. This, it is said, it was the duty of the railroad company to do, and it should have been made by the company the duty of some of its servants to look after it and see that it was done. Whether provision was made for this does not appear. If it was, and the neglect of duty was that of the servant rather than that of the company, it is conceded that the plaintiff is not entitled to recover: *Davis v. Detroit & Milwaukee R. R. Co.* 20 Mich. 105; but the plaintiff contends that this duty, like the duty to provide suitable and safe machinery, is one the company cannot delegate, and it is responsible for any injurious consequences resulting from the neglect to perform it. It becomes necessary, therefore, to determine whether any such duty is made out.

It is to be observed that no complaint is made of the track being unsafe or out of order; what is said is, that alongside the track where the brakeman had occasion to alight, and where this plaintiff did alight, the footing was unsafe by reason of the snow and ice not having been removed from it. This place was in the vicinity of the station; but it might have been anywhere else on the line; for the occasions for a brakeman to leave his train are occurring constantly at considerable distances from the station on either side, as trains are loading, making up or passing each other, and also occasionally at places remote from stations; so that an accident like that which happened to this plaintiff might have occurred from a like cause at any point on the line. If therefore it is negligence in the defendant to fail to provide against the possibility of such an accident at one point on its line, it is negligence to fail in the like provision at any other point, though the degree of negligence will doubtless vary with the proximity to the station where the occasions for leaving the train will be most numerous. It seems to result that the defendant at its peril must keep the ground near its track free from snow and ice for its en-

tire length.    It is also to be observed that these substances are not the only ones that might cause a similar accident.    A stick, a stone, a piece of baggage or freight lying near the track might in like manner cause a brakeman to stumble and fall, and the company at its peril must provide against the likelihood of such a casualty.    So stringent a rule has never been applied to railroad companies, nor could it be without making them insurers against a species of accident which could seldom occur without carelessness on the part of the person injured.

It was said on the argument that the plaintiff was "commanded" to jump from the car, and that this, under the circumstances, was an improper command and was the cause of the injury.    The suggestion has no force.    The plaintiff was called to his supper under circumstances implying haste; but there was no command to jump from the train, and the plaintiff determined for himself his action in that regard.    If a farmer were to call to his hired man to drive mischievous cattle away, and in hastening to do so the man should stumble upon an obstruction and injure himself, it might with the same reason be said that the "command" caused the injury, as to say so in this instance.    There was nothing in the call to supper that was either negligent or improper, or from which the conductor had any reason to anticipate injurious consequences.    It was not necessary, therefore, to consider what would have been the rule had the plaintiff been acting in obedience to an improper command.

The question which the record presents is not whether this railroad company exercised the highest possible care; very few employers do that, whether they be railroad companies, or master mechanics, or manufacturers or farmers; and the law does not require it, and it may be added that nobody expects it.    Whoever engages in any service takes upon himself the ordinary risks of the employment.    This is familiar law, and there is nothing in this case to make it in any way exceptional so far as the application of the rule is concerned.    The cases of *Fort Wayne &c. R. R. Co. v. Gilder-*

*sleeve* 33 Mich. 133 ; *Mich. Cent. R. R. Co. v. Smithson* 45 Mich. 219 ; *McGinnis v. Canada Southern Bridge Co.* 49 Mich. 466 ; and *Batterson v. Chicago & G. T. Ry. Co.* 49 Mich. 184 have covered this case so completely that nothing remains to be said by us upon it.

The fact that the planking or platform extended as far out as where the accident occurred, does not appear to be one of any importance in the case. The accident occurred from running along upon the icy ground near the cars ; and the liability to be injured was neither increased nor diminished by the ice extending somewhat over the planking.

The judgment must be affirmed with costs.

The other Justices concurred.