## HENRY *v.* BOND.

*(Circuit Court, S. D. Mississippi, W. D.   January Term, 1888.)*

MASTER AND SERVANT—RISKS OF EMPLOYMENT—CONTRIBUTORY NEGLIGENCE.

Plaintiff had been for five years foreman in charge of the switch-engine in the yard of the defendant railroad. For two years previous to the injury complained of the railroad had used cars with what are called "aprons" on the sides and ends of flat or platform cars. These apron cars have a plank of some inches wide projecting over the ends and sides so that when the ends come together the floors meet, or nearly so, and to enable them to be coupled a space is left over the coupling appliance instead of on the sides. The coupling is not so convenient, and, when done by getting under the cars, is attended with more risk than in ordinary cars. On the day of the injury complained of, in obedience to the orders of the yard-master, plaintiff proceeded, after dark, to shift the cars. The first car approached was one of those apron cars. His lantern not giving a good light he did not distinguish this from an ordinary flat car, and was standing on the apron of the engine, as he usually did in coupling an ordinary flat car, when he was struck by the apron and severely injured. *Held,* that it was his duty to use all necessary caution to ascertain the kind of car he was coupling, and, having failed to do so, he could not recover.[1]

At Law.   In action for damages.

Action by appellant, William Henry, employe of Vicksburg & Meridian Railroad, to recover for injuries received while in the employ of railroad against F. S. Bond, receiver.

[1] See note at end of case.

*Wade R. Young.* for petitioner.
*Birchett* and *Gilland,* for receiver.

Hill, J. The questions now presented for decision arise upon the petition of *William Henry* v. *F. S. Bond, Receiver,* answer and proof, from which the following facts appear: The petitioner was, and had been for five years, the foreman in charge of the switch-engine in the yard of said railroad in Vicksburg, in moving cars, making up trains, etc. For two years previous to May 13, 1887, said receiver, by his employes, had used on said railroad and the railroads connected with it, cars with what are called "aprons" on the sides and ends of flat or platform cars, used mostly in construction trains, for moving earth and other materials, but when not so used, were used for the transportation of lumber, cotton, and other freight transported on the ordinary flat cars, as the latter cars are used. These "apron cars," as they are called, have a plank of some inches wide projecting over the ends and sides of the car, so that when the cars come together the floors meet, or nearly so, but, to enable them to be coupled, a space is left over the coupling appliance, instead of on the sides, as in ordinary flat cars. They may also be coupled by getting under them. The coupling is not so convenient, and is, when getting under the cars, attended by some more risk than in ordinary flat cars. On the 13th of May, 1887, the freight train was one hour late in arriving in Vicksburg. The yard-master, under whose orders the petitioner was acting, directed the petitioner to shift the cars in the train so as to prepare those going over the river to the Vicksburg, Shreveport & Pacific Railroad, to move soon in the morning. To perform this service, the petitioner proceeded, after dark, to shift the cars in the train, and proceeded with the switch-engine to the train. The first car approached was one of these apron cars. His lantern not giving a good light, he did not distinguish this car from an ordinary flat car, and was standing upon the apron of the engine, as he usually does in coupling to an ordinary flat car, when he struck the apron or projecting plank, and was severely injured, and it is to recover for these injuries he filed his petition, alleging that it was through the negligence and wrongful conduct of the defendant and his employes that he received these injuries. Whether this is so or not, is the question to be determined.

The service in which the petitioner was engaged is recognized as a very dangerous one, and for which extra compensation is demanded and paid. Those who engage in it are presumed to know the risk and to assume it. They are also presumed to know that cars of various construction and mode of coupling will pass over the road, and be coupled and handled by them, and that it will be their duty to understand the risk, and take upon themselves the responsibility of performing this service, and taking care of themselves in its performance. The petitioner knew that these cars were being used on these trains, and also knew the mode and appliances for their being coupled with each other, or with the engine, or with other cars. It was his duty to use all necessary caution to ascertain the kind of car with which the coupling on this occasion was to be

made. This, I am of opinion, the proof shows he failed to do, hence the injuries which he received, which are to be regretted; but I cannot find from the proof that the receiver or his employes are in any way responsible for it. If the petitioner supposed these cars were too dangerous to be used on these trains, he should have so notified the receiver, or other proper officer of the road, and if they were continued, should have left the employment; but no such complaint is shown. Even when the machinery and appliances are defective, if the defect is known to the employe, and he continues in the employment, and takes the risk, and especially when he makes no complaint, he cannot recover for injuries received in consequence of such defect; but in this case no defect is shown or complained of.

The decided cases referred to by the learned counsel for the petitioner, when examined, are found not to be applicable to the facts in this case. The questions here presented under similar circumstances have often been before the courts, state and federal, and, so far as I am informed, have been decided against the claim of the employe, and was perhaps never more exhaustively considered than by Judge COOLEY in the case of the *Railroad* v. *Smithson*, 45 Mich. 212, 7 N. W. Rep. 791, since considered the settled rule on this question.

The result is that the prayer of the petitioner must be denied, and petition dismissed.

NOTE.

MASTER AND SERVANT—RISKS OF EMPLOYMENT. As between a railroad company and its employes, the company is required to exercise only reasonable and ordinary care and diligence in the selection of machinery and instrumentalities for the operation of its railroad. It is not necessarily negligent in the use of defective machinery, which is not obviously defective. Railroad Co. v. Wagner, (Kan.) 7 Pac. Rep. 204; Railroad Co. v. Ledbetter, (Kan.) 8 Pac. Rep. 411. An employer is not bound to furnish the safest machinery, nor to provide the safest means for its operation, in order to escape liability for injuries resulting from its use. If the machinery be of an ordinary character, and such as, with reasonable care, can be used with no more danger than is reasonably incident to the business, it is all that can be required. Rummell v. Dillworth, (Pa.) 2 Atl. Rep. 355, and note. The fact that cars, which a brakeman is required to connect, have draw-heads different in make, style, and construction, which fact contributes to an injury received by the brakeman, is held not to constitute negligence on the part of the company. The increased risk arising from the use of cars with draw-heads of different makes is one which the employe assumes on entering the service. Woodworth v. Railway Co., 18 Fed. Rep. 282; Kelly v. Railroad Co., (Wis.) 23 N. W. Rep. 890. In general, as to the rules which determine the risks assumed by a servant on entering the service of his employer, and what have been held to be such risks, see Hewitt v. Railroad Co., (Mich.) 34 N. W. Rep. 659, and note; Brown v. Railroad Co., (Iowa,) 21 N. W. Rep. 193; Piquegno v. Railroad Co., (Mich.) 17 N. W. Rep. 232; Railroad Co. v. Bradford, (Tex.) 2 S. W. Rep. 595; Scott v. Railroad Co., (Or.) 13 Pac. Rep. 98; Hickey v. Taaffe, (N. Y.) 12 N. E. Rep. 286; Wuotilla v. Lumber Co., (Minn.) 33 N. W. Rep. 551.