## The Michigan Central Railroad Company v. Patrick Leahey.

H. contracted with the Railroad Company to draw, saw and pile for them certain wood at one of their stations, and the plaintiff was employed by him by the day in piling the wood as it came from the saw. While thus employed he was injured by the cars being thrown from the track, and running against the woodshed, and in some way causing his hand to be crushed. For this injury he brought action against the Company. The Company, on the theory (which there was some evidence to establish) that the cars were thrown from the track by means of a plank which H. had placed between the rails to aid in his work under the contract, asked the Court to charge the jury;

1. That the plaintiff and H. while working on the premises were bound to use the same ordinary care against accidents to themselves as was incumbent on the Company, and that if the neglect of plaintiff or of H. in the course of their work under the contract contributed proximately to the accident, the plaintiff could not recover, unless the conduct of the company's servants was wanton or willful.

2. That if H. in the course of his work under the contract placed the plank on the track, and thereby the cars were thrown off and ran against the woodshed, this was neglect on the part of H. which contributed proximately to the accident, and that plaintiff could not recover unless the conduct of the Company's servants was wanton or willful.

There was no evidence that plaintiff knew of the plank being placed on the track, but it was proved to have been seen there by the station agent.

Whether the Company were entitled to this charge, or not, *quere*; the Court being equally divided on the question.

*Heard October 30th and 31st, 1861. Decided May 12th.*

Error to Wayne Circuit. The facts will be found sufficiently stated in the opinions.

*G. V. N. Lothrop* for plaintiff in error:

1. If the negligence of Hidden, a third person, was the *effective* and *proximate* cause of the injury, the defendants are not liable, even though there was a separate negligence on their part which contributed *secondarily* to the injury.

The action is for tort. And the Railroad Company, if liable at all, must be liable either as a *joint* wrong doer or as *sole* wrong doer.

It is true that all *joint* torts are also *several* for the purposes of suit. But the wrong complained of in this action was not *joint*.

In *trespass* there must be a concert or concurrence in the wrong to give a *joint* action. If each act separately, though the acts concur both in time and character, they are but *several* trespasses.—19 *Johns.* 381; 10 *Wend.* 654; 2 *Conn.* 206.

So in *case*, the neglect or omission must be a *joint* neglect or omission to warrant a *joint* action.—17 *Wend.* 562; 1 *Denio*, 495.

But it is clear that there was no *joint* negligence. Even if Hidden and the Railroad Company are both chargeable with negligence, yet it is with several acts of negligence. Their acts were entirely distinct and separate.

It follows that the action cannot be maintained against the Railroad Company as a *several* suit against one of two joint trespassers.

To maintain the action as for a *separate* trespass of the Company, the injury must have arisen directly and proximately from some neglect of the Company. Or, in other words, the neglect of the Company must have been the effective cause of the injury.

But in the absence of any such gross neglect, in the absence of all willful and wanton conduct of the Company's servants, the cars running in a lawful and usual way, the present is a case eminently fit for the application of the rule contended for.

But in this case the neglect of a third person contributes proximately to the injury. This neglect, therefore, is the moving, the effective, the responsible cause — the *causa causans*—of the accident. And the court below misled the jury in refusing the instructions asked for.—7 *Gray*, 100; *Ibid.* 104; 4 *C. & P.* 263.

2. But there is another ground on which Lehey was not entitled to recover. That ground is found in the relation in which Hidden and Lehey stood at the time of the accident. Hidden was on the premises of the company, executing a contract with them. Lehey was an employee

of Hidden in the contract. Under these circumstances, Lehey stands on the same footing as Hidden, and, if the fault of Hidden contributed proximately to the accident, Lehey cannot recover.

Lehey goes on to the railroad premises under the license of a contract. Otherwise he would have been a trespasser. He is injured by an accident arising in the lawful and usual business of the Company. The contract under which he was at work related immediately to that business. He was engaged in sawing and piling wood, near a side track, along which trains came daily to get that very wood. All parties who came on to the premises under that contract, came under the risks and obligations which that contract contemplates.

But it will be said that there is no *privity of contract* between Lehey and the Company. That is true. But it does not follow, therefore, that Lehey is unaffected by the contract.

If he engages under the contract, there arises an identity between him and his employer to a certain extent in the business. And if his employer's neglect in the conduct of the work brings directly upon him an injury, that neglect is his own so far as third persons are concerned. His redress is against his employer.—8 *M. G. & S.* 116; 30 *Barb.* 229, 235.

*W. Gray & T. Romeyn* for defendant in error:

We concede that the Company would not be liable for an injury to one employee occasioned by the fault of another employee engaged in the same business. But this rule has no application, for Lehey was not an employee of the Company.—*Redf. on Railw.* 390; *Pierce on Railw.* 299; 30 *Barb.* 229; 19 *N. Y.* 127; 4 *Seld.* 175.

The case cited from 8 M. G. & S. indeed holds, that where an injury was done a passenger through the mutual fault of the driver of the omnibus in which he was riding, and the driver of another omnibus, the passenger could

THE MICHIGAN CENTRAL RAIL ROAD COMPANY v. LEAHEY.

not recover against the owner of the omnibus in which he was not riding.

The decision was well enough, for plaintiff there was himself as much in fault as the driver. It is also sustainable on principle if we admit that the passenger, by taking that particular omnibus, assumed its control, or made the driver his agent. But on the notion of the plaintiff being *identified* with the management of the omnibus, and thereby losing, under the circumstances, the right of recovery, the case is not sustainable on principle, and in this view has been overruled in N. Y. — 19 *N. Y.* 342; 20 *N. Y.* 492.

In any view, the present case is distinguishable. There the plaintiff was injured while in the very act of using the agency of the omnibus. Here, the plaintiff had no connection with the act of his employer in hauling the wood, or in placing or in using the plank. His sole employment was, as a day laborer, to receive the wood when sawed, and pile it.

There was no privity of contract between Lehey and the Co.; and even if there was any assumption of risks as between Lehey and Hidden, the Company cannot avail itself of the benefits thereof. — 30 *Barb.* 235.

The Company owed the same duty to Lehey as to any other stranger; and, if they were in fault, and he not, cannot escape by saying another stranger was also to blame. While faultless himself, the plaintiff has a remedy against one, or all, whose wrong caused the injury.—20 *N. Y.* 492.

Even if Hidden himself was the party injured, the charge asked by defendants would be incorrect. The plank was not thrown on the track as the train approached. The agents of defendants might have seen this if using proper care. Hidden's conduct was not the *immediate, direct, proximate* cause of the injury; at least, it might not be; and it would be a question for the jury under all the circumstances.

The charge given was the law, and the entire law applicable.—13 *Geo.* 86; 24 *Vt.* 487; 18 *N. Y.* 248, 423. But this view is not very material, for Lehey did not place the plank, did not know it was there, and it was not placed in connection with his employment or occupation.

CAMPBELL J.:

The defendant in error brought an action in the Court below to recover damages for an injury sustained by reason of the cars of plaintiffs in error running off from a side track into their woodshed, where he was at work under one Hubbard Hidden, who had contracted with the company to draw, saw and pile their wood, at Dearborn station, where the accident occurred. The side track was connected with the main track only at one end, and the accident was occasioned by a train of empty wood-racks backing in on this track, between the rows of woodsheds. Damages were recovered below, and the case comes up on some of the exceptions taken on the trial, no error being assigned except upon charges or refusals to charge.

The points made on the assignment of errors are connected in principle, and raise substantially the same question. There was evidence tending to show that the cars were made to run off the track by a plank laid down by Hidden between the rails, to aid him in drawing wood across the track. And it is upon the hypothesis that this may have been the cause of the accident that charges were asked which the Court refused to give without certain modifications; and exceptions were taken to the decisions. Upon the other exceptions no errors are assigned, · and they become immaterial for the purposes of this case.

The plaintiffs in error (the defendants below) requested the Court to charge the jury,

"1st. That the plaintiff and his employer, Hidden, while working on the premises, were bound to use the same

ordinary care against accidents to themselves as was incumbent on the defendants; and if the neglect of plaintiff or Hidden, in the course of their work under said contract, contributed proximately to the accident in question, the plaintiffs can not recover, unless the conduct of the defendants' servants was wanton or wilful.

2d. That, if the jury find that Hidden, plaintiff's employer, in the course of his work under said contract, placed a plank on the said side track, and that thereby the cars of defendants were thrown off and ran against the woodshed, that this was neglect on the part of Hidden, which contributed proximately to the accident, and that plaintiff can not recover, unless the conduct of defendants' servants was wanton and wilful."

The Court declined so to instruct the jury, except with the qualification that it must appear that the plaintiff knew of Hidden's placing such obstruction on the track, and exposed himself to the danger.

The question whether the Court erred in its ruling involves to some extent an inquiry into the doctrine relating to liability where there is negligence in different parties, and also the rules which govern among parties engaged in a common pursuit.

Where no other considerations interfere, it is a well settled rule that a person who has by his own negligence so far contributed to the injury done him that he might, by the use of ordinary diligence or care, have avoided it, he has no right of action: — *Butterfield v. Forrester*, 11 *East*, 60; *Marriott v. Stanley*, 1 *Man. & G.* 568: *Clayards v. Dethick*, 12 *Q. B.* 439. It is unnecessary in the present case to determine whether any less negligence will deprive of that right, because, so far as the rule is applicable at all in the case before us, it depends on the direct negligence of Hidden. The theory upon which the charge was asked, assumed the accident to have been the result of Hidden's act in laying the plank where he did, and of

course, upon that theory, he directly contributed to that result. And had Hidden been the person injured, it must— without any reference to the question of his employment— have been a complete defense to his action should the jury have found such to have been the facts. Upon the question of fact there was enough to go to the jury; and therefore a charge might properly have been asked applicable to that hypothesis.

The question then arises, whether Leahey was by his employment in any way deprived of the right to recover for an injury to which Hidden directly contributed.

The law may now be regarded as settled, that a master is not liable to a servant for the neglect of his fellow servants in doing or omitting to do their portion of the common work. He is only liable where his own personal neglect has directly contributed to the injury, or where he has not used ordinary diligence in employing competent servants : — *Wiggett v. Fox*, 36 *Eng. L. & Eq.* 492; *Tarrant v. Webb*, 37 *Eng. L. & Eq.* 281; *Degg v. Midland Railway Co.* 40 *Eng. L. & Eq.* 376; *Skip v. Eastern Counties Railway Co.* 24 *Eng. L. & Eq.* 396; *Hutchinson v. Railway Co.* 5 *Exch.* 343; *Wigmore v. Jay*, 5 *Exch.* 354; *Farwell v. Boston and Worcester R. R. Corporation*, 4 *Metc.* 49; *Hayes v. Western R. R. Corporation*, 3 *Cush.* 270.

The reason of the rule appears to be, that the master or employer for whose benefit work is undertaken can not be regarded as contracting for anything more than his own personal care and diligence, and if he acts in good faith, the servant must run all those risks which may arise from others neglecting their duty. It must always be presumed that a master gives proper directions to his servants : — *Scott v. Mayor of Manchester*, 38 *Eng. L. & Eq.* 477. His own interest would usually remove any contrary presumption. And there is no want of equity in requiring a servant to assume these risks. He has equal means of

observing and guarding against impending danger with the master, and usually better opportunities.

The rule is not confined to cases of actual employment. Any one who undertakes to perform these duties places himself for the time being in the same condition as if actually emyloyed. The risks attendant upon the service from the neglect of those actually employed, attach to all who undertake the service, whether as volunteers or by actual hiring: — *Degg v. Midland Railway Co.* 40 *Eng. L. & Eq.* 376.

Leahey was not directly employed by the Company. Had he been so employed, there could be no doubt of the application of the rule. This was conceded by counsel on the argument, and could not well be questioned. But the reason of the rule depends more upon the fact of doing the work than upon the mediate or direct nature of the hiring. It is a risk incident to the *work*; and that risk in no way depends of necessity upon the form of the contract, if the work is done for the same general purpose, although different contractors may be employed for different parts by the general principal. Accordingly in *Wiggett v. Fox,* 36 *Eng. L. & Eq.* 486, where a servant of one contractor, engaged in piece work connected with waterworks at the Crystal Palace, was killed by the negligence of servants of the principal of their own employer, that principal was held not to be liable, and his exemption was based on the rules deduced from the authorities applicable to fellow-servants. Any other rule would be based on distinctions more technical than real.

It can make but very little difference whether Hidden and Leahey should be called or considered as servants of the Railroad Company in the technical sense of the term, or as separate contractors. They were employed in the same job. If Hidden be considered as an independent contractor, it is very well settled that his employer is not responsible for his acts done in carrying out a lawful

contract, and could not therefore be responsible for the act in question, if done or directly occasioned by him. Whatever possible restriction may exist as to strangers, under circumstances where work is done on the principal's premises—a point not now before us—no question could arise in favor of an employee of the contractor, who looks immediately to him as a principal. He knows or is bound to know the necessity of care and prudence in all parts of the undertaking, and knows therefore that his employer and his co-laborers are and must be relied upon to do their work, without endangering or interfering with others. This is a duty which attends every such undertaking, and forms a part of every contract, whether of hiring laborers or of bargaining with another who must hire them. If the contract or labor be lawful, and due care is had—as must be presumed — not to select incompetent or reckless men, the ultimate employer or owner of the enterprise has done all in his power to ensure the safety of those who may engage in any capacity in furthering it. Each one has a right to expect from the rest the same degree of care, whether hired by the owner or contractor; and if any failure occurs in this regard, and there results an injury to any of them, the reasons which apply among fellow-servants, to restrain them from an action against the master, apply with increased force where the ultimate employer has no control over the contractor or his subordinate employees in the process of their work, and where, therefore, as a matter of fact, their negligence is in no way to be traced to him. We regard the whole subject as resting upon the same foundation; and as requiring recourse to be had against the persons guilty of actual negligence, where they and the party injured are employed in a common enterprise for the same purpose, and where in pursuing their several duties any risk would naturally arise to the one from the negligence of the other.

Whether passengers in a vehicle, owned and conducted

10 Mich.—N.

by others, are identified with them in their negligence, is a very different question from that which arises where there is an employment for service; and it is not necessary to consider how far such cases as have decided that point are to be followed. The decisions upon the rights and liabilities arising out of engagement in a common service rest on principles of their own, arising from general policy; and they have been made in view of the injustice of compelling employees to answer for that which their own care can not prevent, to those whose opportunities for self-protection are as great, and usually much greater. The few cases in which persons are held to a responsibility more or less in the nature of an insurance, are mostly, if not entirely, founded on a presumption of superior means of knowledge and control, of that from which, or from the mismanagement of which the danger arises. The law has rarely if ever imposed these extraordinary liabilities without some strong reason.

I think the instructions asked for were no broader than the plaintiffs in error were entitled to, upon the hypothesis claimed. I think a new trial should be granted.

MANNING J. concurred in this opinion.

CHRISTIANCY J.:

I have not been able to concur in the opinion of my brother Campbell in this case.

Hidden had taken a contract of the Company, for drawing, sawing and piling their wood at the station. Leahey was at work for Hidden by the day in piling the wood as it came from the saw. It does not appear that he had any thing to do with the drawing, or any knowledge of the mode in which it was drawn across the track. It is not claimed that he was in any sense the servant or employee of the Company, or that there was any privity of contract between him and the Company. The rule therefore that the master is not liable to his servant for an injury arising from

the negligence of his fellow-servant, has, I think, no application to the case.

Where one man enters into the service of another to perform a particular kind of work, he is very properly held, as between himself and his employer, to assume the natural and ordinary risks incident to such service, arising from the negligence or misconduct of his fellow-servants, as well as other risks not arising from the fault of the employer: and if the employer has acted in good faith and with ordinary care and prudence in the selection and employment of fit and competent servants, he should not be held liable to one of them for an injury arising from the negligence of his fellow-servant: because it is fair to presume that the compensation was fixed with reference to such risks. But I am entirely unable to see how this consideration can shield other parties not in privity of contract with the person employed, from responsibility for injuries caused by their own negligence or that of their servants in transacting their business.

As against all other parties except those who are privies to the contract, it is fair to presume that the servant did not intend to relinquish his right to compensation for injuries he might suffer from their negligence or misconduct; as to these the employer could have no interest in requiring such relinquishment, and consequently the compensation for the service can not be supposed to have been fixed with reference to them. I therefore concur entirely in the views expressed by the Supreme Court of New York in *Young v. New York Central Railroad Company*, 30 *Barb.* 234 *and* 235, that the exemption of the employer from liability for injuries caused by one fellow-servant to another, rests solely upon privity of contract, and can not enure to the benefit of other parties. Neither Hidden nor Leahey was properly the servant of the company; certainly not the latter. There was no privity on the part of the Railroad Company with this contract of service between Hidden and Leahey.

THE MICHIGAN CENTRAL RAIL ROAD COMPANY v. LEAHEY.

This is not like the case of *Wiggett v. Fox*, 36 *Eng. L. & Eq.* 486, upon which much reliance has been placed. In that case, it is true the injury was caused by the negligence of the immediate servants of the defendants, general contractors for the erection of a building, while the person injured was more immediately employed by a sub-contractor in piece work on certain parts of the building. But the defendants retained a direct control over those employed by the sub-contractor, and this consideration is declared to be the test whether the case falls within the rule exempting the employer for injuries to one servant caused by the neglect of his fellow-servant. There were also peculiar provisions of contract between the defendants and the sub-contractor, for payment by the defendants of persons employed by the sub-contractor. The case therefore falls substantially within the rule exempting the employer from liability for injuries by one fellow-servant to another, and there would seem to have been some features of the case nearly equivalent to a privity of contract: and the immediate servant of the defendants by whose negligence the injury was caused, and the person injured, were both engaged in performing one general contract, though on different parts of it.

But it does not appear that the Railroad Company in this case retained any control over the employees of Hidden, nor that they had any concern with the payment of Leahey. Nor do I think that Leahey, who was employed by Hidden to pile wood as it came from the saw, can be said to be employed in a " common work" with the immediate servants of the Railroad Company engaged in running the cars on the road.

Leahey was not the master but the servant of Hidden, and had no control over his acts; and least of all over his acts in the drawing of the wood, which does not appear to have come within the sphere of his employment. To hold him liable, therefore, for Hidden's negligence in

drawing the wood, more than for the negligence of a mere stranger, would be to reverse their positions, making the master the servant and the servant the master — a result as illogical as unjust.

I can therefore see nothing in the relation between Leahey and Hidden, or between either of them and the company, which can justly render Leahey responsible for Hidden's negligence, or absolve them from the observance of ordinary care toward Leahey, or shield them from responsibility for an injury done him through the negligence of their servants in running the cars. If Hidden in drawing the wood had negligently left the plank near the rail in a position likely to throw off the cars, the defendants had the right to put a stop to such negligence on his part; but there is nothing in the case to show that Leahey had such right, nor that he had any notice of the fact; while there is evidence from defendant's witnesses, uncontradicted and unimpeached, that one of their servants had seen it and notified the station master of the fact. The defendants, therefore, through their servant and their agent, the station master, were aware of the danger, while, so far as appears, Leahey was ignorant of it.

It was urged by the counsel for the plaintiffs in error, that if the cars were thrown from the track by the plank negligently left by Hidden, then his negligence must be considered the proximate cause of the injury, and therefore that the right of action was against Hidden alone. I have not been able to see the force of this objection. Admitting that the plank, thus negligently left, threw the cars from the track, it does not follow that this was the proximate cause, or any cause, in a just legal sense, of the injury to the plaintiff below; for if, by the observance of ordinary care, the cars, after being thrown from the track, would not have thrown down the shed or inflicted the injury upon the plaintiff, then, certainly, the want of such care must be recognized, if not as the sole, at least

as the proximate cause of the injury. And whether the negligence consisted in not observing, or not removing the plank, or in running at too much speed, or in not reversing the engine or putting on the brakes with sufficient promptness, either before or after the wheel was diverted from the track, yet if with the observance of ordinary care, the injury would not have happened, then the want of such care on the part of the company, or in other words, the negligence of the company through their servants within the line of their service, must, I think, be recognized as the more immediate or proximate cause of the injury, of which Hidden's negligence was the more remote cause.

I have not been able to see how the negligence of Hidden could justify the company in being negligent also, or absolve them from responsibility for an injury, caused by such negligence, to the plaintiff who was chargeable with no want of care on his own part. There is no evidence tending to show negligence on his part, and it is not denied that the question of his negligence was fairly left to, and negatived by the jury. Yet upon the principle of the request to charge, no degree of negligence on the part of the defendant's servants, in running the cars, would render the company liable for the injury to him.

The Court were requested to charge that, if the cars were thrown from the track by the negligence of Hidden, the plaintiff could not recover, unless the conduct of defendant's servants was wanton or wilful. The counsel for plaintiff in error admits in his brief and his argument they might have been liable for gross negligence; and if this be so, the jury might perhaps have found this gross negligence, in view of the evidence that the station agent had been informed of the position of the plank, without removing it. The charge asked would have been equivalent to an instruction that the company could not be held liable at all; for, if the conduct of their servants was wanton or wilful, the

company could not have been held responsible for the injury, unless a different rule is to be applied to railroad companies from that which the law applies to other parties ; as such wanton or wilful conduct would be beyond the scope of their employment. But upon principles of public policy, to secure the enforcement by the master of the observance of ordinary care in his servants to avoid injury to others, the law holds the master liable for injuries occasioned by the *negligence* of his servant in performing the service or business of the master. And on the score of public policy, I think it would be unwise to relax the rule of responsibility in favor of railroad companies, when the very nature of their business, without the observance of at least ordinary care in running their cars, is peculiarly calculated to endanger the lives and limbs of persons near the track. They should, at least, be held to as strict a rule as other parties engaged in business less dangerous to others. But the same rule recognized as applicable to others, is, I think, sufficient to render them liable for the injury in this case, if with the observance of ordinary care on their part it would have been avoided.

I think the charge of the Court below was in all respects correct; that the instructions asked for were properly refused, and that the judgment should therefore be affirmed.

Martin Ch. J. concurred in this opinion.

The Court being thus equally divided, the judgment of the Court below stood affirmed.