ANDERSON *v.* MICHIGAN CENTRAL RAILROAD CO.

1. MASTER AND SERVANT—SAFETY OF PREMISES—DELEGATION OF DUTIES—FELLOW-SERVANTS.

The duty resting upon the master to provide a reasonably safe place for the employé to perform his services is a personal one, and cannot be shifted or evaded by any attempt to delegate it to one who happens to be, as regards some of his duties, a fellow-servant of such employé. It is also a continuing duty, to the extent that it requires the master to provide reasonably for the inspection, and, if need be, for the repair, of premises or appliances.

2. SAME—RAILROAD COMPANIES—TRAINMEN AND SECTION MEN— NEGLIGENCE.

It is no defense, therefore, to an action against a railroad company by a brakeman for injuries sustained by reason of a defect in the track (*e. g.*, an abrupt depression in one of the rails), that the immediate cause of the accident was the neglect of the section men, who were charged with the duty of keeping the track in repair. GRANT, J., dissenting.

3. SAME—INSTRUCTIONS—DUTY AS TO REPAIRS.

In such case, an instruction that, if the defendant allowed its track to become out of repair, it is liable for the resulting damage, is erroneous, since, if the track was reasonably safe as originally constructed, the measure of defendant's duty was the exercise of reasonable watchfulness and inspection to see that it continued in such condition.

---

4. TRIAL—CREDIBILITY OF WITNESS—REMARKS OF COURT.

It is error for the court to express an opinion, in the presence of

| | |
|---|---|
| 107 | 591 |
| 108 | 16 |
| 108 | 399 |
| 107 | 591 |
| 106 | 620 |
| 107 | 591 |
| 118 | 278 |
| 107 | 591 |
| 120 | 135 |
| 107 | 591 |
| f122 | 235 |
| 107 | 591 |
| 123 | 376 |
| 107 | 591 |
| s65NW | 585 |
| 133 | ²582 |
| 107 | 591 |
| 135 | ¹ 97 |
| 107 | 591 |
| 138 | ³447 |
| 107 | 591 |
| 150 | ¹306 |
| 107 | 591 |
| 154 | ¹429 |

the jury, as to the weight of testimony introduced as bearing upon the credibility of a witness.  Per GRANT, J.

5. SAME—CONDUCT OF COUNSEL.

A witness is not discredited merely because he is an employé of the party on whose behalf he testifies, and counsel should not be permitted to advance that theory in argument to the jury. Per GRANT, J.

6. RAILROAD COMPANIES—INJURY TO BRAKEMAN—CONTRIBUTORY NEGLIGENCE.

Where a car immediately preceding that upon which a brakeman was riding left the track, and the brakeman, while responding to a signal for brakes, was crushed between the two cars, it was held, by GRANT, J., that the brakeman was not, as matter of law, guilty of contributory negligence in going to the front of the car, rather than to the rear, for the purpose of applying the brake, it appearing that, although the course taken exposed him to greater danger, he could thereby render more effective service.

7. SAME—RESPONSIBILITY FOR NEGLIGENCE—CONTRACT—PUBLIC POLICY.

A railroad company cannot, by contract with its employé, relieve itself from liability for its own negligent acts.  Per GRANT, J.

Error to Bay; Maxwell, J.  Submitted April 2, 1895. Decided December 24, 1895.

Case by Olive Anderson, administratrix of the estate of William Anderson, deceased, against the Michigan Central Railroad Company, for negligently causing the death of plaintiff's intestate.  From a judgment for plaintiff, defendant brings error.  Reversed.

*H. H. & C. H. Hatch,* for appellant.

*Julian G. Dickinson,* for appellee.

MONTGOMERY, J.  Plaintiff's intestate, William Anderson, was a brakeman in the employ of the defendant company on what is called the "Vanderbilt Branch." On the 16th of September, 1892, the train upon which the decedent was employed consisted of about 10 cars

and a caboose.   There were two Blue Line cars, so called, —one ahead of the engine, and the other (the last car but one) being next the caboose or way car.   When the train reached a point at the top of a grade, and was just beginning to increase its speed, the Blue Line car that was next the caboose ran off the track.   The wheels ran along the ties for some distance, when the forward truck turned sidewise, and began to plow up the ties. The forward end of the Blue Line car was depressed, and the rear end was raised so that it cleared the rail of the platform on the way car, crushing Anderson, who was engaged in setting the forward brake of the way car; the engineer having, before this, whistled for brakes. The negligence complained of was that the company failed to maintain its track in reasonably safe condition.   The testimony offered by plaintiff tended to show that the point in the track where the car left it was the central point in a reverse curve; that at the point where the two curves came together there was a depression in the south rail of the track; that up to this point, as one goes west, this rail had been the outside rail of the curve, and had been considerably higher than the north rail; a short distance further west it became the inside rail, and lower than the north rail.   It is claimed that it should have shaded gradually from the superior elevation to the inferior elevation, but that in fact there was a sudden and sharp drop in the elevation of this rail, which had the effect of causing the car to leave the track.   The plaintiff recovered a verdict, and defendant appeals.   It is claimed by the defendant that those having charge of this track were fellow-servants of the deceased, and defendant is not responsible for their neglect of duty, and, furthermore, if the duty to inspect and repair the track was the duty of the master, the circuit judge erred in his instructions to the jury, in that he, in effect, laid down a rule which would make the company an insurer of its track.

107 MICH.— 38

It appeared that, prior to this accident, there had been two other accidents at or near the place of the injury. One Burns was road-master, and one McMahon assistant road-master. The latter had authority to direct the section men. After one of the prior accidents, McMahon sent the section men to repair the track, but the defect in question was not remedied. Defendant requested the court to charge the jury that, if the car in question ran off the track because the south rail was not sufficiently elevated, the neglect to elevate and repair the same was the neglect of the section foreman in charge of that part of the track, and, the section foreman being the fellow-servant of the deceased, William Anderson, plaintiff could not recover; and, further, that the undisputed testimony showed that the depression referred to was not the result of any fault in the original construction of the track, but was caused by the ordinary use of the track, and that, there being such depression existing, it was the duty of the section men to repair it; and, further, that the section or track men were fellow-servants of the brakemen. If the master has any duty to inspect the premises to see that they continue in reasonably safe condition, or if, having notice of defects, he is bound to repair them, and cannot delegate the duty and thus escape responsibility, it would seem that these instructions were inappropriate, for it would appear that, McMahon having general charge of these tracks, and notice that an accident had occurred at the point where the injury resulted to deceased, it was his duty, as representative of the master, to see that the track was in proper condition.

It is very clearly the law in Michigan, and most other jurisdictions, that the duty to provide a reasonably safe place for the employé to perform his services rests upon the master, and that this duty is one that cannot be shifted or evaded by any attempt to delegate it to one who happens to be, as regards some of his duties, a

fellow-servant of the employé whose safety is involved
and to be provided for. This doctrine is enunciated and
recognized in both opinions in *Beesley* v. *F. W. Wheeler
& Co.*, 103 Mich. 196, and in *Dewey* v. *Railway Co.*, 97
Mich. 329, and is fully discussed by Mr. Justice HOOKER
in *Balhoff* v. *Railroad Co.*, 106 Mich. 606. See, also,
*Van Dusen* v. *Letellier*, 78 Mich. 492. This duty is also
a continuing one, to the extent that it is required that
the master shall provide reasonably for the inspection,
and, if need be, for the repair, of premises or appliances.
7 Am. & Eng. Enc. Law, 830, and cases cited.

In *Tangney* v. *J. B. Wilson & Co.*, 87 Mich. 455, Mr.
Justice MORSE, speaking for the court, said:

"It was the duty of defendant to provide a safe place
for plaintiff's work, and to furnish safe and suitable
appliances to be used in and about his work. And its
duty did not end here. It was also its duty to see that
the appliances so furnished should be kept safe, so far
as reasonable and proper watchfulness and inspection
would enable it to do so."

See, also, Bailey, Mast. Liab. p. 36; *Roux* v. *Lumber Co.*,
94 Mich. 607; *Baltimore & Ohio R. Co.* v. *Baugh*, 149 U. S.
368; *Louisville & N. R. Co.* v. *Ward*, 10 C. C. A. 166.

The cases that are claimed to establish the rigid doc-
trine that section men are in all cases fellow-servants
of the trainmen are considered and distinguished, per-
haps sufficiently, by Mr. Justice HOOKER, in *Balhoff* v.
*Railroad Co.* It will be found on examination that in
*Michigan Central R. Co.* v. *Austin*, 40 Mich. 250, the doc-
trine was not necessary to the result reached. In the
case of *Loranger* v. *Railway Co.*, 104 Mich. 80, the opin-
ion shows that the injury resulted from the dumping
of ashes on the track by a fireman of the defendant.
The ashes were fresh, and it is plainly to be implied
that no fault of failing to inspect occurred; and well
might the case have rested upon this ground, or upon
the ground of contributory negligence. In *Schaible* v.
*Railway Co.*, 97 Mich. 318, the injury resulted, not from

fault in the appliances, but from neglect in their use. *Piquegno* v. *Railway Co.*, 52 Mich. 40, is a case in which Mr. Justice COOLEY distinguishes between the responsibility of the company for obstructions to the track caused by use, and defects in the track itself.

The charge of the court was in part as follows:

"The plaintiff requests me to charge you that 'it was the duty of the defendant to provide a reasonably safe track and equipments, and to keep the same in repair; and if it did not do so, but allowed its track to become out of repair in the particulars claimed on behalf of the plaintiff, and if that was the cause of the accident in which William Anderson lost his life, then you will return a verdict for the plaintiff.' That is all right, with the qualification,—and I give it with this exception,— excepting the deceased himself contributed to the injury."

And again:

"In answer to some of these requests, perhaps I should state that the railroad company must furnish a place for its employés to work upon that is reasonably safe."

If the road was reasonably safe as originally constructed, the duty of the company was to exercise reasonable watchfulness and inspection to see that it continued in a reasonably safe condition. *Tangney* v. *J. B. Wilson & Co.*, *supra*. This is conceded by plaintiff's counsel to be the measure of the defendant's duty; but it is claimed that, under the facts of the case, this neglect of reasonable inspection conclusively appeared, and also that the jury could not have interpreted the charge above quoted as imposing on the company a duty to see, at its peril, that the track continued safe. We think the question of whether the defendant's employés used reasonable care in inspection was, under the proofs, a question for the jury, and we are not able to say that the other portions of the charge cured the error in this instruction. It is true, the court charged that there must be negligence on the part of the company, but

he did not, otherwise than as shown by the quoted portions of the charge, define what that negligence must be. We are not prepared to say that the jury may not have been misled.

Judgment reversed, and a new trial ordered.

McGRATH, C. J., and HOOKER, J., concurred with MONTGOMERY, J. LONG, J., did not sit.

GRANT, J. The accident which resulted in the death of the plaintiff's intestate occurred on what was called the "Vanderbilt Branch" of the defendant's railroad, which was between 11 and 12 miles long. It was a logging road, and had been in use several years, doing a large amount of business. The business had fallen off, and the defendant was proceeding to dismantle the road. For this purpose one Sargeant, the assistant roadmaster, was gathering up the cars, preliminary to removing the track. He had picked up 9 or 10 cars, with which he was returning at the time of the accident. A Blue Line car was ahead of the engine, and another in front of the caboose, the rear car of the train. Upon reaching the top of a grade, and while on a slight reverse curve, the Blue Line car in front of the caboose jumped the track. The engineer whistled for brakes, and the train was stopped after running nearly 400 feet. The deceased was rear brakeman, and was seen in the cupola of the caboose (his proper place) at the time the car jumped the track. The front end of the Blue Line car had dropped down upon the track, and the rear end was raised up so that the bottom of it was about a foot and a half higher than the top of the brake of the way car. The deceased was caught between the ends of the two cars, and instantly killed. The declaration contains eight counts, alleging various acts of negligence. All but one were abandoned upon the trial, and the case was left to the jury on the theory that the acci-

dent was caused by the depression of the outside rail of the curve.

1. One Hutton was the principal witness for plaintiff, and at the time of the accident was a section foreman on the defendant's main line. One Asselyn was the section foreman on the branch. Hutton had testified that he went in on the following morning, in obedience to instructions, to repair the track. On cross-examination he was shown a book kept by him, in which he made entries of the work performed by him and the men under him, and in which it was claimed by the defendant that no entry was made of his being at the place, or doing any work, repairing the track, after the accident. This was for the purpose of attacking the credibility of the witness. On redirect examination, counsel for plaintiff asked a question for the purpose of explaining the reason why such entries were not made. To this counsel for defendant objected. A colloquy arose between counsel and the court, during which the court said: "Well, I don't think the question is very material. Because he did not account for an hour or two in the morning, in an exact manner, don't reflect any question of the honesty of his bookkeeping." The remark was uncalled for, and was outside the province of the judge. The explanation called for was, of course, proper, and, if the book contradicted his parol statement, the entire subject was for the consideration of the jury. The remark would naturally tend to prejudice them, and cannot be excused by the fact that counsel had made a remark reflecting upon the witness.

2. The attorney for the plaintiff, in his final argument to the jury, said:

"Every one of their witnesses knows that if he testified anything to the injury of the Michigan Central Railroad— Every one of those witnesses is interested, to the extent that he wants to keep his job. Every one of those witnesses knows that, if he testifies anything

to the injury of the Michigan Central Railroad Company,
he puts that job in jeopardy."

We think circuit judges should promptly condemn the
use of such intemperate language, if there is no evi-
dence to sustain it. It would be a reflection upon
employés to hold that they are discredited as witnesses
simply because they are employés. There is no pre-
sumption that they will testify falsely, or warp their
testimony, to keep their jobs, or that employers are
inhuman enough to discharge them for telling the truth.
It is entirely competent for attorneys to argue to juries
bias and interest on the part of witnesses who are rela-
tives or employés of litigants. But, in the absence of
evidence to sustain them, counsel should not be per-
mitted to make charges like those contained in the above
language.

3. The defendant alleges error in the refusal of the
court to instruct the jury that the deceased was guilty
of contributory negligence because he went to the front,
rather than the rear, of the caboose, to apply the brake.
The theory is that the front platform was more dan-
gerous than the rear, and that the deceased chose the
more dangerous place. The court left the question of
contributory negligence to the jury. We think he might
properly have instructed them that there was no evi-
dence of contributory negligence. The deceased was at
his post in the cupola when the car ran off. It became
necessary to stop the train as soon as possible. The
engineer signaled for brakes. The conductor of the
train, in response to questions by defendant's counsel,
testified that the use of the front brake was more effect-
ual than the rear one, in stopping the train. There is
no evidence to the contrary. With a car off the track,
there was more or less danger in both places, and the
deceased cannot be held guilty of contributory negli-
gence for going to that place where he could render the

most effective service. The instruction was more favorable than the defendant was entitled to.

4. The court instructed the jury as follows:

"It was the duty of the defendant to the plaintiff's intestate to provide a reasonably safe track and equipments, and to keep the same in repair; and if it did not do so, but allowed its track to become out of repair in the particulars claimed on behalf of the plaintiff, and if that was the cause of the accident in which William Anderson lost his life, then you will return a verdict for the plaintiff."

The court also repeated the statement "that the railroad company must furnish a place for its employés to work upon that is reasonably safe."

It is contended that this is error, and that the true rule is that the employer is bound only to the exercise of reasonable care and diligence in endeavoring to provide the employé with a safe place in which to work, and that, if the employer has exercised such care, he is not responsible for consequences, though the place where the employé is to work becomes unsafe. The expression used by the circuit judge is found in many decisions, and is applicable to the facts of those cases, and must be so construed. The rule of the learned circuit judge, applied to the present case, would result in making the employer the insurer of a reasonably safe place in which to work, notwithstanding he may have exhausted all reasonable care and diligence to make it so. No claim is made, nor is there any evidence tending to show, that the defendant did not properly construct its road. The sole claim is that the ties at the outer side of the curve became depressed, by use, from 1 to $2\frac{1}{2}$ inches, for a distance of 7 or 8 feet, and that the sudden dropping of the car from the higher to the lower ground caused it to jump the track. The original construction of the road is therefore not before us for consideration. The road having been properly constructed, the sole duty of the defendant was to exercise

reasonable care and diligence to keep it in a proper and safe condition. Plaintiff's counsel cites a large number of authorities to sustain the rule laid down by the circuit judge, and to show that the duty to supply a reasonably safe place is absolute. An examination of those cases will show that the language used was applied to places shown by the plaintiffs' testimony to be unsafe *per se*. *Swoboda* v. *Ward*, 40 Mich. 420, and *Huizega* v. *Lumber Co.*, 51 Mich. 272, were cases of uncovered machinery, where inexperienced persons were employed, and no caution given. *Parkhurst* v. *Johnson*, 50 Mich. 70, was a case where an inexperienced laborer was not warned against the danger. In *James* v. *Mining Co.*, 55 Mich. 335, an inexperienced laborer, not a miner, was not warned that there was danger the mine would cave in. In *Smith* v. *Car Works*, 60 Mich. 501, the deceased, a molder, was directed to carry a ladle of molten iron over ice with water standing on it,—a work which was outside the obvious scope of his employment. The negligence consisted in not informing him of the latent danger from explosion if the molten iron came in contact with the water and ice, and in instructing the molders to carry it over an unsafe place. The instruction should have been that it was the duty of the defendant to use reasonable care and diligence in inspecting its track, and keeping it in safe condition. Wood, Mast. & Serv. § 410; *Fosburg* v. *Fuel Co.*, (Iowa) 61 N. W. 400; *Lindstrand* v. *Lumber Co.*, 65 Mich. 261.

5. It is next contended that the deceased, under his contract, assumed all the risks of his employment as brakeman. The contract recited that his duties had been explained to him, and that the performance thereof would expose him to great danger, the risk of which he would assume for himself, and that he would use a constant and proper care to avoid injury to himself and others. This contract cannot be construed to relieve the defendant from the consequence of its own negligent

acts. If that were its intent, it would be contrary to public policy, and void. He assumed all the risks and dangers incident to a dangerous business. The testimony on the part of the defendant tended to show that the track was in proper condition, and that cars oftentimes jump the track when it is in good condition, and it is impossible to detect the cause. The jury should have been instructed that, if this was the case, the deceased assumed the risk, and no liability attached to the defendant. This rule is too well established to require the citation of authorities.

6. The defendant requested the court to instruct the jury as follows:

"(1) The undisputed testimony is that the depression in the south rail of the track, described and referred to in the testimony, was not the result of any error or fault in the original construction of the track, or its plan, but was caused, if there was any such depression, by the ordinary use of the track by trains running over it. There being such depression existing, it was the duty of the section men to repair it.

"(2) Section men or trackmen are fellow-servants of the brakemen; and, if the accident was the result of or was caused by a depression in the track, the existence of the depression was the negligence of the trackmen, and therefore the plaintiff cannot recover."

These requests were refused.

The theory of the plaintiff was that it was the duty of the defendant, at all events, to keep its track in reasonable repair, and she rested her case upon evidence of the depression of the rail. She requested the following instruction:

"The railroad company could not delegate to employés the duty of keeping its track in reasonable repair, so as to relieve itself from responsibility therefor to plaintiff's intestate."

The judge read this request to the jury, and said:

"I have got to refuse that, in the form in which it

is presented, but on that subject I will say that if it
was the duty of this man Asselyn and his hired man,
Scott, to keep that track in repair, and they were merely
the hired men of the company, in the ordinary,—I will
not say what I was going to,—and they failed to keep
it in repair, why, the injury in that case might arise
from the act of the coemployé, and the railroad company
is not liable.   But the testimony in that connection
shows that Mr. Burns was superintendent over that
branch of the subject, and the care of the road with
Mr. McMahon, and then other parts of the road with
the division superintendents.   If the matter was in
charge of Mr. Burns, in that sense, the blame would fall
on his misconduct, and the railroad company might be
liable.   *   *   *   Now, having passed the first question
of the decedent's carelessness, then on the question of
the defendant's negligence, then you will take up the
third,—why it was caused, who caused it, was it a
coemployé, or was it one of the principal officers of
the company, whose duty it was to see that the road
was in proper condition?   If it was a coemployé, the
plaintiff cannot recover; and if it was the head road-
master, or manager above that, as a representative of
the company, you may hold the road liable for it."

Counsel, in his brief, says:

"It was perfectly proper for the court to say to the
jury, 'If you find there was a depression in the rail,
so sudden and sharp that it threw this car from the
track, under the circumstances of this case, I charge
you that the condition was the result of negligence on
the part of the defendant company, or some of its
agents.' "

We do not find this language in the charge of the
court, as printed in the record, and probably counsel
intended to say that the court would have been justified
in so instructing them.   Such is his theory upon which
he bases his right of action.

It is established by numerous decisions of this court
that trainmen and section men are fellow-servants, and
neither can recover against the master for the negligent
acts of the other.   The defendant's roadbed was prop-

erly constructed. It had furnished properly constructed and equipped engines and cars, and had employed competent servants, both as trainmen and section men. If the engineer had failed to properly manage or inspect and repair his engine, thereby causing injury to a section man, the defendant would not be liable. If the section man failed to perform his duty, legally and properly imposed upon him, by reason of which a trainman is injured, can the latter recover? Why should there be any difference between the negligent act of the engineer, in not properly inspecting, repairing, and managing his engine, and the negligent act of a section man, in failing to properly inspect and repair the track? The place is rendered unsafe by the negligent act of each. There is as much necessity for proper inspection, care, and diligence in the one case as in the other.

About three weeks before this accident, a car jumped the track at or about the same place. Three section gangs, of one of which Mr. Hutton was foreman, were sent to repair it. No question is raised as to their competency. Mr. Hutton testified that he then saw there was a slight depression, but he did not raise the rail, and gave no instructions in regard to it. Probably he did not consider it dangerous. One Scott, then a section man on this branch, testified that they then put in 71 or 72 ties. "*Q.* Did you do anything to the track itself, at the very spot where that car went off at the time? *A.* We lifted it in some places, but not quite through. We thought, may be, it was the right place." About seven days previous to the Anderson accident, another car jumped the track at or about the same place, damaging the track. This also was repaired by the section men. Hutton is the only witness who testified to any depression prior to the Anderson accident. He testified, "The defect was not in the original construction of the track, but the use of the track had made it lower at this spot."

It is agreed by all the witnesses that it was the duty of the section men to put the track in proper condition after these accidents. If one rail was too low, it was therefore their duty to raise it. If they failed to repair it properly, such failure was the negligent act of a fellow-servant, for which the defendant is not liable, provided it was proper to commit the inspection and repair to section men; and there is no evidence that this duty is not properly committed to them. If it were made the duty of a road-master, a division superintendent, or other higher official, to inspect the track and see that it is in proper condition, another question would arise, which we need not now discuss. The present record is destitute of any evidence tending to show that good and careful management of a railroad requires the inspection and repair of tracks to be committed to other than section men, or that any such duty was imposed upon Burns or McMahon. The doctrine of a fellow-servant and a safe place will be found discussed, and authorities cited, in *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196, and *Schroeder* v. *Railroad Co.*, Id. 213. See, also, *Loranger* v. *Railway Co.*, 104 Mich. 80; *Dewey* v. *Railway Co.*, 97 Mich. 329.

The first request should have been given, because it correctly stated the facts and the legal duty of the section men. The second request should have been given, because it correctly states the law, but should have been followed by the instruction that, if the defendant had either actual or constructive notice of the defect, the negligence of the fellow-servant would be no defense. The oral charge of the court, while recognizing the doctrine of fellow-servant, is not sufficiently clear and explicit to correct the error.

Since writing the above, two other cases have been submitted, involving various phases of the doctrine of fellow-servant. *McDonald* v. *Railroad Co.* (December 30, 1895, 65 N. W. 597), and *Perry* v. *Railroad Co.* (Decem-

ber 31, 1895, 65 N. W. 608). In both these and the present case this court is urged to adopt the rule, which appears to have been adopted by the courts of some of the states, that the duty of inspection is imperative upon the master, and cannot be delegated. The principle is the same in each case, and a further discussion of the subject seems appropriate. Stability is of the utmost importance in judicial decisions. A rule adopted and followed by a long line of decisions in this court should not be set aside, unless it is plainly contrary to common sense and reason, notwithstanding that many other courts have adopted the opposite rule. But in other courts the opinions upon the subject are by no means uniform. I am of the opinion that the judgments in these three cases cannot be sustained without overruling nearly all the decisions of this court exempting the master from liability for the negligence of a fellow-servant.

The difficulty in determining whether the negligent act complained of is the negligence of the fellow-servant, so as to relieve the master from liability, is recognized by both courts and text writers. The decision of the New York court of appeals (*Flike* v. *Railroad Co.*, 53 N. Y. 549) states a general rule, which is recognized by many authorities; but still the question remains, in every case, is the servant charged with the performance of a duty which belongs absolutely to the master, and of which he cannot be relieved by delegating it? The duty to run an engine or manage any machinery with care and skill is as imperative upon the master as the duty of inspection. If the master himself were in charge of a railroad train, as either engineer or conductor, he would be liable for any negligence resulting in injury to any of his employés. Only when he may delegate that duty is he relieved from responsibility. If there is any sound principle upon which is based the doctrine of the non-liability of the master for injury to one fellow-servant

caused by the negligence of another, courts should determine that principle, and apply it to each case presented. As already remarked, it has no application where the master himself is personally superintending the work. The reason arises from the necessities of the case. The master cannot give personal attention to all the operations of an extensive business, carried on at different places, and extending, as in the case of railroads, over hundreds of miles. The law in the operation of railroads imposes three duties upon the master: (1) To use reasonable care in the construction of its roadbed, so as to make it safe; (2) to use reasonable diligence and skill in furnishing engines, cars, and machinery to operate its road; (3) to use reasonable care to employ competent servants in all departments.

In *Michigan Central R. Co.* v. *Leahey,* 10 Mich. 199, Justice CAMPBELL used this language:

"The law may now be regarded as settled that a master is not liable to a servant for the neglect of his fellow-servants in doing or omitting to do their portion of the common work. He is only liable where his own personal neglect has directly contributed to the injury, or where he has not used ordinary diligence in employing competent servants. [Citing a large number of authorities.] The reason of the rule appears to be that the master or employer for whose benefit work is undertaken cannot be regarded as contracting for anything more than his own personal care and diligence, and, if he acts in good faith, the servant must run all those risks which may arise from others neglecting their duty. It must always be presumed that a master gives proper directions to his servants. His own interest would usually remove any contrary presumption. And there is no want of equity in requiring a servant to assume these risks. He has equal means of observing and guarding against impending danger with the master, and usually better opportunities."

In *Smith* v. *Potter,* 46 Mich. 264, it is said:

"As we have frequently held, in accordance with what

we conceive to be the legal rule, such actions as the present are based on actual negligence of the defendant sued, or of some representative who is held in law to personate him. And in such a business as requires the employment of a multitude of persons, beyond the possible constant supervision of either the ultimate or representative principal, there can be no negligence without the failure to use such precautions in choosing agents and guarding against perils as diligent prudence and foresight require. When the principal has done all that can be reasonably required of him to prevent risks to his servants, he has done all that he owes them."

That case involved the duty of inspection, and, in all its essential features, is identical with the case of *Perry* v. *Railroad Co.*, the only difference being that in the latter case the car belonged to the defendant. It is neither claimed nor charged that the original construction was defective, or that it was not in good condition when sent out on its journey by the defendant. The sole contention is that the coupling apparatus was injured while in transit over another road; that it was returned to defendant for transportation over its road in a defective condition, which the car inspector should have discovered. There is no pretense, nor can there be, that the master was actually at fault.

In the case of *McDonald* v. *Railroad Co.*, an engineer, whose duty it was to take care of and inspect his engine, to see that it was in proper condition, and to report any defects which he could not remedy himself, took out a defective engine, knowing it to be defective, but in his judgment he considered it safe for that trip. Undoubtedly, it would have been, if he had used it in the usual manner. In consequence of his negligence a brakeman was injured. No one but the engineer was negligent.

When the above decisions were rendered from which I have quoted, the court was composed of eminent jurists. The reason for the rule is there perhaps sufficiently stated. Is there anything unjust or unreasonable in the

rule that where the master is engaged in a business whose multitudinous operations he cannot personally superintend; has, in the first instance, furnished a safe place, safe appliances, tools, and machinery, and competent men to use them, and to see that they are kept in reasonably safe condition,—he shall be relieved from liability where injury results from the negligence of one of his fellow-servants to another, both of whom are engaged in the same common employment?

I can think of no better illustrations than these three cases (the present case, *McDonald* v. *Railroad Co.*, and *Perry* v. *Railroad Co.*) afford. It is impossible for a master to inspect daily the entire bed of a railroad. Consequently, these roads are divided into sections, of a few miles each. Each section is placed in charge of a section gang, with a foreman, whose duty it is to daily inspect the section committed to their charge, and to keep the roadbed in safe condition. Why should the master be held liable for an act over which he has not, and in the very nature of things cannot have, any control? He must delegate the authority. He has done all it is possible for him to do. His own interest prompts him to do all in his power to secure proper inspection and proper repair of the roadbed. If it is not kept in proper repair, he becomes liable in immense damages for injuries to both passengers and freight, as well as the destruction of his own property. Such is this case. *Michigan Central R. Co.* v. *Austin,* 40 Mich. 250; *Henry* v. *Railway Co.*, 49 Mich. 496.

The master owns hundreds of cars and engines, running daily over various portions of his road. Personal inspection by him is impossible. He must delegate it. He employs a competent engineer; places his engine in his charge, with instructions to inspect it, to take care of it, and to see that all defects are repaired, and not to use it when it becomes unfit for use. The engineer is

107 MICH.—39

the proper person to be intrusted with this duty. He finds the push bar of his engine cracked, and a defect in the brake apparatus. His judgment, however, is that it is still safe for use. He violates the instructions of his master, neglects his express duty, and thereby injury results to a fellow-servant upon the train. Is there any reason why the master should be held responsible? He did all within his power to prevent it. Such is the case of *McDonald* v. *Railroad Co.*

Hundreds of freight cars are received from other roads at various stations along the line. They must be inspected to see whether they are in a safe condition, both as to the manner of loading and their own fitness for use. The master cannot inspect them. He must delegate it. He employs competent inspectors, and gives them explicit instructions. The inspector errs in judgment, or willfully passes an unsafe car. The result is an injury to a trainman. The negligence of a fellow-servant engaged in the same common employment is alone responsible for the injury. Why should the master, who has done all within his power to prevent it, be held responsible? Such is the case of *Perry* v. *Railroad Co.*

I will now consider some of the numerous decisions of this court upon the question. *Smith* v. *Potter* was decided in 1881. For nine years it was accepted as the established rule in this State by both the profession and the people, and has never been overruled. It was never doubted until after the decision of *Van Dusen* v. *Letellier*, 78 Mich. 492. In the majority opinion it was, however, expressly recognized as the law, and that case distinguished from it. Justice LONG concurred in the opinion rendered by Justice MORSE; Justice SHERWOOD concurred in the result; Justice CAMPBELL dissented; and Justice CHAMPLIN concurred in reversing the judgment, saying: "I do not think the duty of inspection, when such inspection is required by the circumstances of the

case, can be delegated by the master, in such manner as to avoid responsibility." This expression of the learned justice still leaves open the question as to what circumstances require an inspection by the master. This court has always and unanimously held that an inspector of the loading of cars is a fellow-servant, for whose negligence the master is not held responsible. Clearly, Justice CHAMPLIN did not intend to cover such a case by his sweeping statement, but his language must be construed with reference to the facts of that case. There is nothing, however, in that opinion which can be fairly construed as impairing the rule in *Smith* v. *Potter*, and other like decisions of this court. It is not in conflict with it; yet it is cited by counsel in these three cases, and in many others which have been presented to this court, as the principal authority against the rule theretofore established and uniformly adhered to. No occasion existed for delegating the duty of inspection. The defendants were mill owners. Their business was in a narrow compass and at one place, where personal supervision and inspection were practicable. They were seldom present at their mill, and delegated their entire business to agents, who, it was claimed, were competent. I concur in the conclusion reached by the majority of the court,—that the defendants could not have relieved themselves from liability, under such circumstances, by the delegation of authority and the control of their business. The agents were not fellow-servants, but the *alter ego* of the defendants. That case is on all fours with *Ryan* v. *Bagaley*, 50 Mich. 179, where the defendant sought to relieve himself from liability by appointing a competent agent to control and manage the business of mining. Those two cases have no bearing whatever, in my judgment, upon those now under consideration. They could not have been decided in favor of the defendants without abrogating entirely the doctrine of *alter ego*, and relieving the master in every case where he has

appointed a competent agent. They go no further than to hold that the master cannot surrender the entire control of his business to another, so as to avoid responsibility for those acts which he could and ought to have controlled. This court has gone further, and held that, where the master has surrendered a large branch or portion of his business, the party to whom he intrusts it is his *alter ego.* Such are the cases of *Hunn* v. *Railroad Co.,* 78 Mich. 513, and *Harrison* v. *Railroad Co.,* 79 Mich. 409. In the former case a train dispatcher had the absolute control over a division of the railroad several hundred miles in length, and the charge of running all trains over it. In the latter case a road-master had charge of a division of the road 150 miles in length. I especially call attention to the language of that opinion, rendered by Mr. Justice LONG, found at pages 420 and 421, expressly recognizing the rule as laid down in *Michigan Central R. Co.* v. *Leahey, supra.*

In *Miller* v. *Railway Co.,* 90 Mich. 230, an engineer was held a fellow-servant of a switchman; the negligence being a defective step, which it was the duty of the engineer to repair. In *Michigan Central R. Co.* v. *Austin,* a defective rail upon a side track was the alleged cause of the accident. The negligence, if any, was that of the trackmen, who were held to be fellow-servants with the switchmen. A depression in the rail was there alleged to be the cause of the accident, the same as in this. In *Morton* v. *Railroad Co.,* 81 Mich. 423, the defect was in the original construction of the brake chain. The responsibility for inspection was not involved. The learned author, Mr. Bailey, in his work on Master's Liability, at page 134, misstates that decision, when he says: "It was held to be the master's duty to inspect chains to be used, and for a lack of such inspection by the person whose duty it was so to do, whereby injury was sustained by the servant, the master was responsible." In *Loranger* v. *Railway Co.,* 104 Mich. 80, the fire-

man who dumped the ashes upon the track, and the section man whose duty it was to remove them, were fellow-servants with the plaintiff, a brakeman, and the company was not liable for their negligent act.

In the three cases now under discussion, no knowledge of the defect was brought home to the master. They all involve acts performed in one common employment. In neither could the master have done any more than he did to prevent the accident. The negligence of the coemployé properly charged with the duty, and competent to perform the duty, was alone the cause of it. If there is any sound reason for the adoption of the doctrine of fellow-servant, it is, in my judgment, in these three cases. If no reason exists here, the rule may as well be abrogated entirely.

I have not deemed it important to refer to the decisions of other courts, whose decisions are in irreconcilable conflict. I have aimed to show the rule established by this court in the beginning, and consistently followed, and from which I see no reason for now departing. I think it is founded in good sense, sound reason, and justice.

Judgment reversed, and new trial ordered.