HARRY A. HANNAH *vs.* CONNECTICUT RIVER RAILROAD COMPANY.·

Hampshire.   September 23, 1891. — October 26, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Railroad — Defect in Road-bed — Negligence — Employee's Due Care — Exceptions.*

A brakeman employed in a railroad freight-yard, while uncoupling cars, stepped into a hole in the road-bed under a switch rod, and was caught and injured.   In an action against the railroad company to recover for such injuries, there was evidence that the hole or space under the rod was larger than need be for working the switch, and more than under any other rod in the yard, and looked as though it had been dug out for a drain; that the hole had existed for a week without the plaintiff's knowledge, and he did not notice it at the time, and it was afterwards partially filled up and made safe; that he was acting under orders of the conductor of a train he was helping to make up, and went between the cars and rails to pull the coupling-pin, which stuck; and that it was customary and quite as safe to go between the rails under such circumstances. *Held,* that whether the defendant was negligent and its road-bed defective, and whether the plaintiff was in the exercise of due care, were for the jury.

There was also evidence that before the accident the defendant's yardmaster had told the plaintiff not to go between the rails in uncoupling cars, but there was no evidence of the yardmaster's having any authority over the plaintiff, or of any rule of the company forbidding the going upon the track in uncoupling cars. *Held,* that a ruling that the plaintiff could not recover if he went upon the track after being thus directed by the yardmaster, was properly refused.

A ruling which assumes that a certain act of the plaintiff was unnecessary, when such necessity is one of the issues directly involved in the case on which evidence is introduced on both sides, is properly refused, and such refusal affords no ground of exception.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ as a brakeman in its freight-yard at Holyoke.

At the trial in the Superior Court, before *Barker*, J., the plaintiff testified that on December 23, 1889, he was in the employ of the defendant as a brakeman, and for two or three months before that time had worked in its Holyoke yard, and was familiar with the same, and with the position, construction, and working of the various switches therein situated; that during the forenoon of that day he was engaged in assisting to make up a freight train, of which one Campbell was the conductor; that two box cars were to be cut off from the train, and Campbell told him to uncouple them; that he then went between the two cars and within the rails to uncouple them, and walked along between the cars; that the cars were going slowly, and a man could keep up with them without walking very fast, but the speed was increasing as it was down grade; that the coupling-pin stuck when he tried to pull it out, and he asked Campbell, who was on the top of the forward one of the two cars, to set up the brakes and relieve the pressure on the pin; that as the car slackened he felt his foot go into a hole under a switch rod connected with one of the switches beside the track; that, failing to get his foot out by pushing it with the other foot, he threw himself out from between the cars, and, the wheels passing over his leg which remained fast, he was injured ; that some of the brakemen in uncoupling cars reached in between them from a position outside the rails, and others stepped in between the rails; that he was accustomed to go between the cars; that it was just as safe to pull the pin when between the rails as outside of them, and might be safer; and that he had worked over and about this switch during the time he was in the yard, and had never noticed any hole there.

There was also evidence that the switch to which the rod was attached under which the plaintiff's foot was caught was called a stub switch, and was not of a modern pattern, but was similar to other switches used in that freight-yard; that this rod, by which the rails were moved, extended across the track, being clamped to the under side of each rail; that the rod was placed over the soil of the road-bed and between two of the ties ; that it was necessary to leave a space under the rod for the purpose of keeping it free from snow and ice, the smallest space practicable being half an inch, and the usual space about two

inches; that the distance of this rod from the edge of the tie where the plaintiff's foot slipped under it was five and a half inches, and from the bottom of the rod to the soil directly under it was the same distance; that the formation of the land at this point was such that surface water accumulated on one side of the track; that the hole under the rod was scooped out between the ties, and had been there about a week, and sloped from one rail to the other, and looked as if it had been dug out for a drain to carry off the water thus accumulating; and that after the accident the depth of this depression under the rod was reduced to a depth of one and a half inches, so that a man's foot could not slip under the rod.

The defendant's yardmaster testified that it was not necessary for a brakeman to go between the rails in pulling a coupling-pin, and that he never did it himself; that there was no difficulty in reaching in to draw the pin from outside the track, though brakemen frequently went between the rails for that purpose; and that (but in this he was contradicted by the plaintiff) he had had occasion to speak to the plaintiff about going in between the rails for that purpose, and had told him on the day of the accident, and before it happened, that he did not wish to see him do it again.

The defendant asked the judge to rule as follows: (1) " That upon all the evidence the plaintiff cannot recover"; (2) " If the jury find that the plaintiff had been informed by the yardmaster that it was unsafe to go between the tracks, and directed him to keep out from between them, he cannot recover for any injury received while going between the tracks, it not appearing that it was necessary for him to do so"; and (3) " If the jury find that, on going between the cars and rails to remove the pin, plaintiff found that he could not draw the pin, and continued to walk between the cars and between the tracks, until the brakeman should apply the brake so as to give him slack, and was injured while so walking, he was not in the exercise of due care, and cannot recover."

The judge refused so to rule, and submitted the case to the jury upon the questions whether the defendant was negligent and the plaintiff was in the exercise of due care, instructing them, among other things, that if the plaintiff found he was exposed to

a danger to which he ought not to have been exposed, and, knowing and realizing the same, he continued in the defendant's employment, then he was to be held to have accepted the additional risk which he need not to have accepted unless he saw fit, and could not recover for any injury resulting therefrom; and that if he knew that there was a dangerous place in the track, and understood there was an arrangement which might catch his foot if he went between the rails and walked there with one car in front of him and one behind him, without its being his duty to do so, then he could not recover, because he was incurring a known danger, and not in the exercise of his duty.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*G. Wells & J. Barnes*, for the defendant.

*W. G. Bassett*, for the plaintiff.

MORTON, J.    It was a question of fact for the jury whether the place where the plaintiff was injured constituted a defect in the road-bed, and whether its existence was due to the negligence of the defendant.    There was evidence tending to show that it had been there a week or more, and looked as though it had been dug out for a drain, and that there was a larger space between the switch-rod and the ground than at any other switch in the yard.    There was also testimony tending to show that the distance between the switch-rod and the ground was about five and a half inches, and that the distance was about the same between the switch-rod and the tie.    Some of the witnesses spoke of it as a hole; and evidence was introduced, without objection, that after the accident, and before the trial, it was partially filled up and repaired, so that the distance between the switch-rod and the ground was made considerably less than at the time of the accident.    It is true that the railroad company was not bound to have the distance between the switch-rod and the ground the least that would admit of the working of the switch, but it was required to use reasonable care in seeing that the place was such that those of its employees who might have occasion to pass over it in the discharge of their duties could do so with safety, provided that they themselves were in the exercise of due care.    It was for the jury, upon all the evidence, to say whether the railroad company had fulfilled this duty, and

whether the situation in which the ground was left under and around the switch-rod and between the rails constituted a defect in the road-bed. The jury must have found that the defendant did not perform its duty, and that the road-bed was defective, and we think there was evidence that would warrant these findings.

It was also a question for the jury whether the plaintiff was in the exercise of due care. It was for them to give such weight as they thought it fairly deserved to the testimony relating to his familiarity with the yard and with the switch where the accident occurred and its condition; to that relating to the manner in which he attempted to uncouple the cars, and to the reasons given by him for going between the cars and walking along between the rails; to the testimony of the yardmaster as to what he told the plaintiff about going between the cars; and to other matters which appeared in evidence on the one side or the other. Even if the plaintiff had known of the existence of the hole, it was not conclusive evidence of a want of due care on his part for him to get into it, if that happened while he was in the discharge of his duty, and while his attention was directed to the work in which he was engaged. *Snow* v. *Housatonic Railroad,* 8 Allen, 441. *Plank* v. *New York Central & Hudson River Railroad,* 60 N. Y. 607.

The plaintiff, however, testified that he never noticed any hole or anything of the kind there. There was testimony that it was customary to step in between the cars to couple or uncouple them; that whether the man stepped in between the rails depended on circumstances; that the chances were just as good in between the cars and the rails as on the outside; that if the pin stuck, one could not always stand outside the track and rails and pull it out; and that when the plaintiff went to pull out the coupling-pin it stuck, and he walked along between the cars, which were moving slowly, trying to pull the pin out, and waiting for them to slack in accordance with his request, so that he might pull the pin out and uncouple the car as the conductor had directed him to do, and that he did not think anything at all about the switch. We cannot say, upon this and other evidence in the case, that the plaintiff was, as matter of law, guilty of negligence, and that the verdict of the jury in

his favor was not warranted.    *Lawless* v. *Connecticut River Railroad*, 136 Mass. 1.    *Gustafsen* v. *Washburn & Moen Manuf. Co.* 153 Mass. 468.

The second ruling requested by the defendant was rightly refused.    The ruling asked for assumed that it was not necessary for the plaintiff in the discharge of his duty to go between the rails.    Whether it was necessary or not was one of the issues directly involved in the case, and on which testimony was introduced on both sides.    The court could not, therefore, assume that it was not necessary.    Again, it does not appear what authority the yardmaster had over the plaintiff, or whether he had any.    If he had none, then what he said to the plaintiff was in effect nothing more than a caution addressed by one fellow servant to another.    Perhaps the real significance, in either aspect, would lie in its effect upon the question whether the plaintiff did or did not use due care ; but in the present case the error lay in assuming what was not shown to exist, namely, that the plaintiff was bound to obey the directions of the yardmaster.    Further, if we assume that the plaintiff was bound to obey the directions of the yardmaster, and that what was said by the yardmaster to the plaintiff was a direction not to go between the rails in removing the coupling-pin, still there was no evidence of any rules established by the defendant road forbidding it, and the plaintiff was afterwards told by Campbell, the conductor of the train which the plaintiff was helping to make up, and under whose immediate control he was at the time, that he wanted the cars cut off in between; and the plaintiff may well have understood that, even if what was said by Campbell was not an order to go in between the cars, he was authorized to cut them apart by going in between them in such mode as appeared to him in the exercise of ordinary care to be necessary.

The instructions requested were, therefore, rightly refused, and those that were given are, so far as stated in the bill of exceptions, correct.    The entry must therefore be,

*Exceptions overruled.*