JAMES A. LORANGER v. THE LAKE SHORE & MICHIGAN
SOUTHERN RAILWAY COMPANY.

*Master and servant—Injury to brakeman—Safe place—Contribu-
tory negligence—Fellow-servants.*

1. An experienced freight brakeman, after turning a switch to
   allow the engine and tender to pass onto another track for the
   purpose of running out some cars, ran past the engine and
   tender, which were backing up " as fast as a fast walk," and
   when within about two car lengths of the cars, and without
   signaling the engineer, who was bound to obey his orders, to
   slacken speed, stepped in front of the tender for the purpose
   of reversing a crooked link, and thereby enabling him to make

the necessary coupling. While walking sideways upon the track, in his attempt to reverse said link, the brakeman stubbed his toe against a pile of ashes and cinders, lately dumped upon the track from a passing engine, fell, and was seriously injured. The brakeman had passed over the track on his way from the cars to the switch, but did not notice the ashes and cinders. The rules of the railroad company, and his contract with it, required the brakeman to look before entering upon the track in front of a moving train, to see that the track was clear. And it is held that the brakeman was guilty of such negligence as would bar a recovery for the injuries sustained.

2. The usual and proper place to dump the ashes and cinders was at the turntable. And it is held that the fireman who dumped the ashes and cinders onto the track, and the section men whose duty it was to remove them, were fellow-servants with the brakeman, and for their negligence the railroad company is not liable, unless it had actual notice of the obstruction, or the same had existed for such a length of time that the law will imply such notice.

Error to Monroe. (Kinne, J.) Argued November 23, 1894. Decided February 12, 1895.

Negligence case. Defendant brings error. Reversed, and no new trial ordered. The facts are stated in the opinion.

*C. E. Weaver* (*George C. Greene* and *O. G. Getzen-Danner*, of counsel), for appellant.

*J. R. Rauch* and *C. A. Golden* (*George M. Landon*, of counsel), for plaintiff.

GRANT, J. The accident which resulted in plaintiff's injury occurred July 31, 1879, at 5 o'clock p. m. The train crew consisted of five men,—conductor, engineer, fireman, and two brakemen,—plaintiff being the head brakeman. The freight train in charge of the crew had been engaged during the day in distributing steel rails. Just before the accident, the engine and tender were standing upon one track, and the rest of the train upon the main

104 MICH.—6.

track. , Plaintiff was directed to go over upon what was called the "pier track," and couple some cars to the engine for the purpose of putting them into their train going west. It was necessary to turn a switch in order to get the engine and tender upon the pier track. Plaintiff testified that he was directed by the conductor to proceed in haste, and throw the switch, there being no switchman at hand to do the work. He hurried along the track; turned the switch; the engine passed over the switch, and backed upon the pier track. The engine and tender were backing up "as fast as a fast walk." Plaintiff ran past the engine and tender "on a dog trot," and when within about two car lengths of the cars to be coupled stepped inside the rail in advance of the tender for the purpose of reversing a crooked link, so as to be able to make the coupling when the standing cars were reached. He did not signal to the engineer to slacken speed; and while he was walking sideways, in his attempt to turn the link, he stubbed his toe against a pile of fresh ashes and cinders lying between the rails, fell, and was seriously injured. While other grounds of negligence are alleged in the declaration, none were insisted upon at the trial except the pile of cinders and ashes, and upon this alone the recovery was based. Plaintiff had just passed over the track on his way to the switch, but did not notice it. He says he glanced at it as he fell, and thought it was five or six inches high, filling the entire space between the rails. He gave the only evidence on his part as to the manner of the accident.

The contention of the plaintiff is—

1. That he was not furnished a safe place to work in by reason of this pile of cinders and ashes, and that its being there was the negligence of the defendant.

2. That it was good and safe railroading and customary for brakemen to go in front of the cars for the purpose

for which he went while they were moving "as fast as a fast walk."

3. That in so doing he was in the exercise of due care.

The contention of the defendant is—

1. That in so doing he violated its rules, and his written contract of service.

2. That the ashes and cinders, if any were there, were placed there by some fireman or engineer, and that, if they were there, the duty to remove them belonged to the section crew, and that all these employés were fellow-servants, for whose acts the defendant is not liable.

3. That the plaintiff was guilty of negligence.

For a full understanding of the case a further statement of facts may be important. Plaintiff was a man of experience in, and thoroughly familiar with, the business in which he was engaged. The movements of the engine were entirely under his control, and the engineer was bound to obey his orders. The engineer was looking out upon one side and the fireman on the other of the cab, ready to receive orders from him. The rules of the company particularly bearing upon this case—Nos. 28 and 29—are as follows:

"28. Every employé is required to exercise the utmost caution to avoid injury to himself or to his fellows, and especially in the switching of cars, and in all movements of trains; in doing which work each employé must look after, and be responsible for, his own safety. Jumping on or off trains or engines in motion, getting between cars in motion to uncouple them, and all similar imprudences, are dangerous, and in violation of duty. All employés are warned that if they commit them it will be at their own peril and risk.

"29. Every employé is hereby warned that before exposing himself in working, or in being on the tracks or grounds of the company, or in working with or being in any manner on or with its cars, engines, machinery, or tools, he must examine, for his own safety, the condition of all machinery, tools, tracks, cars, engines, or whatever he may undertake to work upon or with, before he makes use of or exposes himself on or with the same, so as to ascertain,

so far as he reasonably can, their condition and soundness.
* * * The object of this rule is to protect employés
from suffering personal injury from any cause. While the
company will be responsible to each one for the discharge
of all its duties and obligations to him, and for any fault.
or neglect of its, own or of its board of directors or general
officers which are the proximate cause of injury, yet it will
not be responsible to him for the consequences of his own
fault or neglect, or of that of any other employés of the
company, whether they, or either of them, are superior to
him in authority, as conductor, foreman, or otherwise, or
not; it being the right and duty of every employé, under
all circumstances, to take sufficient time, before exposing
himself, to make such examination as is here. required, and
to refuse to obey any order which would expose him to
danger. No person who is careless of others or of himself
should be continued in the service of this company."

His written contract of service, signed by him, is as
follows:

" I, the undersigned, having been employed in the service
of the Lake Shore & Michigan Southern Railway Company,.
hereby acknowledge the receipt of a copy of the printed
orders, rules, and regulations of said company, also of a
copy of this agreement, and do hereby agree with it, in
consideration that it will pay me the wages stipulated, that.
I will, so long as I remain in its service, faithfully respect.
and obey all said. orders, rules, and regulations, and all
others which may be adopted, and of which I may have
notice; and I do further agree that I will, for myself, in
all cases, before exposing myself in working, or in being
on the tracks or grounds of the company, or in working
with or being in any manner on or with its cars, engines,
machinery, or tools, examine, for my own safety, the con-
dition of all machinery, tools, tracks, cars, engines, or
whatever I may undertake to work upon or with, before I
make use of or expose myself on or with the same, so as.
to ascertain, so far as I reasonably can, their condition
and soundness; and that I will promptly report, either to
the superintendent of the company or to its agent who.
may be my immediate superior officer, any defect in any
track, machinery, tools, or property of the company affect-
ing the safety of any one using or operating upon or with.
the same. The object of this agreement being:

"*First.* To protect me from suffering personal injury from any cause.

"*Second.* That, while the company will be responsible to me for the discharge of all its duties and obligations to me, and for any fault or neglect of its own or of its board of directors or general officers which are the proximate cause of injury, yet it will not be responsible to me for the consequences of my own fault or neglect, or of that of any other employés of the company, whether they, or either of them, are superior to me in authority, as conductor, foreman, or otherwise, or not; it being expressly agreed upon the part of the company that it is my right and duty, under all circumstances, to take sufficient time, before exposing himself, to make such examination as I have here agreed to, and refuse to obey any order which would expose me to danger."

There is a direct conflict of evidence as to the existence of the pile of cinders and ashes. The other brakeman, the engineer, the fireman, and the conductor testify that plaintiff rode on the engine down to the switch. These witnesses also testify that, after taking care of plaintiff, they examined the end of the tender, to determine, if possible, how the accident happened; that upon the brake beam they found fresh marks make by boot heels, and that on the end of the tender, which was thickly covered with dust, were finger marks reaching nearly to the top of the tender. The testimony of the engineer upon this point is as follows:

"There were prints where he [plaintiff] stepped on the brake beam, and finger marks six or seven inches from the top of the tank. The marks looked as if he had attempted to reach the molding of the tender and had missed it,— could not reach high enough,—as he stepped on the brake beam, and missed his hold."

To the same effect are the other witnesses above named. One, David Boies, a witness having no connection with the defendant, testifies that he was about four blocks distant when the accident happened; that he saw plaintiff at the switch; saw him step in front, put his foot on the brake beam, and reach his hand up to take hold; that he slipped

his hold and fell down. The claim of the defense was that the cars standing on the pier track were more than 200 feet from the place of the accident, and that plaintiff was attempting to get upon the brake beam to ride.

1. We think the plaintiff must be held to have been guilty of contributory negligence. The 'rules of the company and his own contract required him to look before entering upon the track in front of a moving train, to see that it was clear. According to his own testimony, he had just passed over the track, and presumably over this very obstruction. It was but two or three steps from him when he stepped upon the track, and he could have seen it at a glance. He did see it as he fell, and was able to tell its size. No rule of the company required him to go in front of a train moving as fast as this one was, to reverse the link, or perform any other act of service; and there was no evidence that any such method was known or sanctioned by it. Such a requirement would be at once condemned as cruel and inhuman. If it was customary for the employés to do so, it was a custom for which they, and not the company, must be held responsible. Employés cannot bind a company by the performance of such reckless acts, no matter how frequently they may do them. It is abhorrent to reason and common sense to say that it is good and safe railroading and careful conduct for a brakeman to step in front of a train moving as fast as a fast walk, and perform a service which requires him to step sideways to keep out of the way, knowing that death is almost sure to follow should he miss his footing. Testimony that such conduct is prudent, and constitutes good railroading, is incompetent, and unworthy of credence. The fireman testified that he had seen brakemen climb onto a brake beam to ride, but that he always stopped his engine, and made them get off. Should brakemen do this habitually, would it make a custom binding upon the

defendant? When employés become forgetful of danger, and perform acts in a manner not required by the rules of the company, and entirely unnecessary, they assume the consequence of these acts.

2. It appears to be undisputed that the usual and proper place to dump the ashes and cinders was at the turntable. According to the plaintiff's own showing, the ashes were fresh and had been recently dumped. They may not have been there an hour. There is nothing in the record to show how long they had been there. Under the repeated decisions of this Court, the fireman who dumped them, and the section men whose duty it was to remove them, were fellow-servants with the plaintiff, and for their negligent acts the defendant is not liable. The defendant had furnished a good roadbed, and in this respect had done its duty in furnishing a safe place. It was rendered unsafe temporarily by the act of a fellow-servant. In order to bind defendant, actual notice of the obstruction must be shown, or it must be shown to have existed for such a length of time that the law will imply notice. Neither is shown or claimed. This is another attempt to avoid non-liability for the acts of a fellow-servant by invoking the doctrine of a safe place. *Jarman v. Railway Co.,* 98 Mich. 135, and authorities there cited; *Railway Co. v. Adams,* 105 Ind. 163.

Judgment reversed, and no new trial ordered.

LONG and HOOKER, JJ., concurred with GRANT, J. McGRATH, C. J., and MONTGOMERY, J., concurred in the result.