DE CAIR *v.* MANISTEE & GRAND RAPIDS RAILROAD CO.

1. Railroads—Injury to Brakeman—Coupling Moving Cars—Evidence—Custom.

    In an action by a railroad brakeman for injuries sustained by being run over by a car while he was walking in front of the same in an endeavor to adjust a coupling, evidence that it was the custom of employés of defendant to go in front of moving cars, in coupling them, was admissible, though no rule on the subject had been promulgated, and there was therefore no occasion to prove a waiver. Hooker, C. J., and Grant, J., dissenting.

2. Same.

Where a brakeman, who was injured while passing in front of a moving car, alleged that he was in the performance of his duty as a brakeman, and was using due care, at the time, it was competent for him to testify as to his purpose in going in front of the car.

3. Same—Defective Track—Negligence.

Evidence that a railroad company, after a washout in its yard, constructed a ditch across the main track, 18 inches wide and 12 inches deep, and allowed the same to remain for some time, filled with snow even with the ties, in consequence of which a brakeman was injured while making a coupling, is sufficient to justify a finding of negligence on the part of the company.

4. Same—Contributory Negligence—Question for Jury.

Where a railroad brakeman, in accordance with a custom of employés of the company, went in front of a car moving at from 4 to 5 miles an hour, on the main track, for the purpose of adjusting a coupling, and was run over and injured in consequence of stepping in a ditch constructed across the track, which was filled with snow, and of the existence of which he had no knowledge, the question of his contributory negligence was for the jury. Grant, J., dissenting.

Error to Manistee; McAlvay, J. Submitted April 11, 1902. (Docket No. 95.) Reargued January 14, 1903. (Docket No. 37.) Decided June 30, 1903.

Case by Frank De Cair against the Manistee & Grand Rapids Railroad Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Kellogg & Carbys* (*F. W. Houghton*, of counsel), for appellant.

*T. J. Ramsdell* and *Charles A. Withey*, for appellee.

Montgomery, J. The plaintiff was a brakeman on the defendant's road on the 1st of February, 1900. He left the service of defendant temporarily, and was away until the 9th. He returned and resumed work on Febru-

ary 10th. In the meantime, and on February 7, 1900, there was a heavy rainfall, causing a washout in the yard of defendant company at Filer City. On the morning of February 8th, the superintendent of defendant company caused a ditch to be constructed across its main track, from the west side to the east side, about 18 inches wide and 12 inches deep. Some four days later the ditch was filled with snow, up even with the ties.

On the morning of February 26th, the plaintiff left Filer City, with his train and crew, and returned between 3 and 4 in the afternoon. He was acting as rear brakeman. The train consisted of the engine, two box cars, and about thirty flat cars loaded with logs, and, beyond this, a merchandise car and a passenger coach. As the train neared the south switch at Filer City, plaintiff uncoupled the two rear cars, and they were left about 150 feet south of the south switch. The other cars were pulled ahead, and made a flying switch for the logs; and the engine, with two Manistee & Grand Rapids box cars, loaded with wood, backed up towards the dock switch, which is about 600 feet north of the south switch.

After the plaintiff had uncoupled the two rear cars, he stepped off the merchandise car, and walked down the east side of the track, close to the rail, towards the dock switch. The bed of the track was covered with snow. He paid no particular attention to the roadbed between the rails. He went north on the east side for a distance of about 200 feet beyond the south switch. He then stepped across to the west side, because the bank was narrower on the east side. In the meantime the logs had been switched onto the dock tracks, and the engine, with the two cars loaded with wood, had backed up near the dock switch. The engine then started to back the two cars loaded with wood past the south switch, in order to couple onto the two cars left standing, and push them back south of the crossing, and clear the main track for Manistee. The plaintiff met the engine and the two box cars, backing slowly, a little south of the dock switch.

He stepped on the ladder at the southwest corner of the car farther from the engine, and rode along upon the car. When the plaintiff met the cars, they were going at the rate of 6 or 8 miles an hour. When about 150 feet from the south switch, plaintiff gave the fireman a signal to back slowly, and, as they passed the south switch, the speed had been reduced so that they were then running about 4 or 5 miles an hour.

Just after they passed the south switch, plaintiff observed that the coupler on the car on which he was riding was closed, and needed adjustment. He had now passed onto the reverse curve, so that he could no longer see or signal the fireman. Plaintiff then stepped down from the ladder, and in front of the moving car, for the purpose of crossing over to the other side, where he could signal the engineer. The roadbed was free from obstruction, and apparently all right. In passing, he attempted to adjust the coupler, by opening it, so that it would couple onto the standing car left down by the crossing. He took hold of the coupling pin with his left hand, and the knuckle of the coupler with his right, and at the same time traveled towards the south, in front of the moving car; the track being apparently all right. He stepped into this ditch, fell down, and the car passed over and crushed his leg, just above the ankle. The circuit judge directed a verdict for the defendant, and the plaintiff brings error.

The plaintiff offered to show that it was the custom of employés of defendant company, in coupling cars, to go in front of moving cars. The court excluded this testimony. The testimony was admissible, under our former holdings. *Hunn* v. *Railroad Co.*, 78 Mich. 526 (44 N. W. 502, 7 L. R. A. 500); *Eastman* v. *Railway Co.*, 101 Mich. 597 (60 N. W. 309); *Fluhrer* v. *Railway Co.*, 121 Mich. 212 (80 N. W 23); *Jones* v. *Railroad Co.*, 127 Mich. 198 (86 N. W. 838).

We think it was also competent for the plaintiff to testify for what purpose he got down and started to pass through in front of the moving car. The declaration

averred that he was in the performance of his duty as a brakeman, and was using due care and prudence. If the purpose in which he was engaged was one necessarily connected with the performance of his duty as a brakeman, it would tend to support this allegation.

That the testimony of the condition of this track was such as tended to show negligence on the part of the company is not open to doubt. *Ragon* v. *Railway Co.*, 91 Mich. 379 (51 N. W. 1004); *Palmer* v. *Railroad Co.*, 87 Mich. 281 (49 N. W. 613); *Sweet* v. *Railroad Co.*, 87 Mich. 559 (49 N. W. 882); *Anderson* v. *Railroad Co.*, 107 Mich. 591 (65 N. W. 585); *Hollenbeck* v. *Railway Co.*, 141 Mo. 97 (34 S. W. 494); *Chicago, etc., R. Co.* v. *Maroney*, 170 Ill. 520 (48 N. E. 953, 62 Am. St. Rep. 396); *Hannah* v. *Railroad Co.*, 154 Mass. 529 (28 N. E. 682).

The chief contention of defendant is that the plaintiff was guilty of contributory negligence, as matter of law, and the case of *Secord* v. *Railroad Co.*, 107 Mich. 540 (65 N. W. 550), is cited to sustain this contention. That case was determined upon the doctrine of assumed risk. The injury to the plaintiff resulted from his hand being pinched in coupling two cars, it being claimed that the couplings were defective. But it was said that the condition was as apparent to the plaintiff as to the defendant, and that he must be held to have assumed the risk. It was added that the condition of the drawbar was discovered when three car lengths from the place of coupling, and that plaintiff "testified that he could have raised the drawbar without taking hold of the link, thus avoiding any danger of his hand being pinched, and that he would not keep hold of the bar so long again in making such a coupling." We think the case is not controlling of the present. In the present case the testimony tended to show that the plaintiff was following a custom in passing in front of moving cars in the performance of his duty. This is not, as matter of law, contributory negligence. See *Ashman* v. *Railroad Co.*, 90 Mich. 576 (51 N. W. 645); *Eastman* v. *Railway Co.* and *Jones* v. *Railroad*

*Co., supra;* and *Jarvis* v. *Railroad Co.*, 128 Mich. 61 (87 N. W. 136).   It does not appear that the injury resulted from conditions known to the plaintiff to exist.   On the contrary, it is at least open to an inference, to be drawn by the jury, that plaintiff could have completed all he started out to do, without injury to himself, but for the concealed defect in this track, not open to observation. We are not prepared to hold, as matter of law, that it was his duty to anticipate such an excavation in the main track of the defendant railroad.

The judgment will be reversed, and a new trial ordered.

MOORE and CARPENTER, JJ., concurred with MONT-GOMERY, J.·

HOOKER, C. J.   I concur in the reversal of this case, upon the ground that plaintiff's negligence was not conclusively proved.   In the absence of a rule, or, if there be a rule prohibiting employés from entering between moving cars to couple them or adjust couplers, if there be evidence showing its waiver, it is doubtful if the fact of such entry can be said to be negligence *per se*, under the circumstances of this case, where, although the estimated speed of the train was 4 miles an hour, or more, the plaintiff was able, after his fall directly in front of the car, to scramble upon his hands and feet, for a distance of 12 or 14 feet, and then get all of his person from the track but one foot.   There is evidence indicating that it was good railroading to enter and adjust the coupler in the way attempted, and that it is necessary for both couplers to be open, when the cars are to be coupled on a sharp curve, and that opening them could not be done from the side of the car.   While we know that there is always some risk in entering between moving cars, and can imagine cases where we will take judicial notice that it is so, we cannot make such a rule applicable to all cases of entering between moving cars to couple them or adjust couplers.

No rule forbidding the practice was proven in this case. Therefore proof of the custom upon this road was un-

necessary to prove a waiver of a rule.    It was competent to prove the general custom of well-conducted roads, to prove whether this act was negligent or not.    But this does not warrant proof of the custom upon this or any other particular road, except as it may appear on cross-examination, and the court properly excluded such proof. The test is, What is the common or *generally* recognized method and practice?    That is no more to be proved by the practice upon defendant's road than any other.    To rest the case on the method followed by defendant's employés would practically be to make it liable for accidents resulting from whatever practice its employés should follow, whether it could be shown to be good railroading or not.    Our attention is called to no Michigan case where such a practice has been followed.    All, where proof of custom of the defendant road has been held proper, were cases where it was claimed that a rule had been violated by the plaintiff, and a waiver or abrogation of the rule was sought to be shown by the practice of the defendant's employés.    That was true in the case of *Ashman* v. *Railroad Co.*, 90 Mich. 576 (51 N. W. 645), which might, at first blush, seem to justify the claim that such testimony is admissible when a rule is not relied on, but there is no such adjudication in that case.    *Carrier* v. *Railway*, 61 Kan. 447 (59 Pac. 1075).    It may be doubted if the rule as to waiver has not been carried beyond reasonable limits by some of the courts.    See 3 Elliott, Railroads, § 1282; 19 Am. & Eng. Enc. Law, 822.

GRANT, J. (*dissenting*).    I think the court properly directed a verdict for the defendant. · The act of walking or running in front of a railroad train for the purpose of arranging or making a coupling has always been regarded as exceedingly dangerous.    It requires no argument to show that it is so.    In doing it, the brakeman is required to walk sidewise, with his eyes fixed upon the coupling apparatus, and not upon the track where he is walking or running.    Railroad companies for many years experi-

mented in the attempt to devise a coupling apparatus which would relieve brakemen from this dangerous work. It was at last accomplished by the device known as the "Automatic Coupler," wherein the coupling could be made by the brakeman outside the track. This device commended itself not only to railroad men, but to the people, through their legislatures. We find, therefore, that the Congress of the United States, in 1893, enacted that "on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." Act March 2, 1893, chap. 196, 27 Stat. 531. The legislature of this State, as early as 1885, enacted a similar provision. 2 Comp. Laws, § 5511. This defendant company had complied with these provisions of the law, and had in use upon this train these devices, which obviated any necessity of going in front of the car to effect a coupling. The plaintiff himself testified: "The couplers were both in good condition, and in good working order." They were supplied with levers for raising the pins from the outside of the track.

The train was under the exclusive control of the plaintiff. If necessary to go in front of the car to arrange the coupling pin, he could have done it before he started the train. He could have stopped it, if necessary to do it. Instead of arranging the coupling pin in ways which were open to him and perfectly safe, he deliberately chose one full of danger. He entered upon the track at a place where neither the engineer nor the fireman could see him, without any notification to them of his intended conduct, upon a track covered with snow, when he was 164 feet from the car to which he was to make the coupling, and the train running, as he testified, at from 4 to 5 miles an hour. He describes his action as follows:

"I placed my left hand on the pin, and my right hand

on the knuckle, in the act of opening it. I immediately started then to open the knuckle on this moving car. I did not attempt to get over on the other side of the track first, and give a signal to slacken up, but immediately started to open the coupler on this moving car."

If this is acting with due care and with proper regard not only for one's own safety, but for the benefit of his employer, I can hardly comprehend what negligence would be. There was no rule of the company requiring such risks on the part of its brakemen, and, if there had been, as we said in *Loranger* v. *Railway Co.*, 104 Mich. 80, 86 (62 N. W. 137), "such a requirement would be at once condemned as cruel and inhuman." No one is justified in taking such risks, unless absolute necessity demands it.

I think the court correctly excluded all evidence of custom on the part of the brakemen to go in front of moving trains to make couplings, on the ground that this was not a case for the application of the rule in regard to custom. Employés cannot create a custom, however universal, against their employer, by continually doing things in a reckless and negligent manner, when the employer has provided every means possible to do them with safety. I do not think such a doctrine finds approval in the decisions. There are cases holding that it is not negligence *per se* to go in front of a moving train to effect a coupling. But these are cases where there is also evidence tending to show that the work on the railroad could not be satisfactorily done otherwise. They do not apply to cases like the present one, where no possible excuse exists for doing the work in the manner this was done. We said in *Loranger* v. *Railway Co.*, *supra*:

"It is abhorrent to reason and common sense to say that it is good and safe railroading and careful conduct for a brakeman to step in front of a train moving as fast as a fast walk, and perform a service which requires him to step sideways to keep out of the way, knowing that death is almost sure to follow, should he miss his footing."

I think the judgment should be affirmed.