GILLESPIE *v.* GRAND TRUNK RAILWAY COMPANY OF
CANADA.

1. MASTER AND SERVANT — PERSONAL INJURIES — FELLOW-SER-
   VANTS—SAFE PLACE TO WORK.
   The duty of the employer to furnish a safe place for the em-
      ployé is a continuing one to be reasonably performed by in-
      spection and repair and cannot be delegated for performance
      so as to relieve the master from responsibility.

2. SAME—RAILROADS—SAFETY OF ROADBED—TEMPORARY OBSTRUC-
   TIONS—DUTY TO REMOVE—FELLOW-SERVANTS.
   It cannot be said, as a matter of law, that a railroad company
      has performed its duty of exercising ordinary care to main-
      tain its switchyard in a condition reasonably safe for the use
      to which it is put by providing servants whose duty it is to
      inspect, repair, and remove obstructions, where it appears
      that piles of gravel causing injury have been allowed to re-
      main between and outside the rails for two to four days after
      falling there from cars being moved about the yard.

3. SAME—ASSUMED RISK.
   A switchman does not assume the risk of being tripped by

piles of loose gravel allowed to remain between and outside the rails of the switchyard for several days after falling there from cars being moved about the yard.

4. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
    Plaintiff, a switchman, attempting to couple a moving car to a standing one, and finding that the automatic coupler would not open, stepped in front of the moving car and attempted to open the coupler as he walked ahead of the car when he stumbled on a pile of loose gravel which had fallen from another car at some previous time and was injured by the moving car. A rule of the company forbade switchmen going in front of moving cars, but a custom to disregard the rule was shown and plaintiff testified that his act was not dangerous but for the obstruction of which he had no knowledge. *Held*, that whether plaintiff's negligence contributed to his injury was a question for the jury.

Error to Shiawassee; Miner, J. Submitted October 15, 1907. (Docket No. 52.) Decided December 10, 1907.

Case by William Gillespie against the Grand Trunk Railway Company of Canada and the Grand Trunk Western Railway Company for personal injuries. There was judgment for plaintiff, and defendants bring error. Affirmed.

*H. Geer*, for appellants.

*Watson & Chapman*, for appellee.

OSTRANDER, J. The testimony tended to prove that, in the operation of defendant's road, cars loaded with sand and gravel were moved, and that in the yard used for switching and for making up trains some of the material had fallen upon and across the track, forming piles or ridges from 16 to 20 inches wide at the base, narrower at the top, and high enough to stand two inches above the rails, extending between the rails and from 15 to 20 inches outside the rails. The obstructions were upon the main line track and had existed for a period of from two to four days. The yard was, otherwise, in proper condi-

tion, and, apparently, unusually well surfaced. Plaintiff was employed with a night crew in switching cars. While walking, or running, in front of a moving car, adjusting an automatic coupler, he stumbled upon or in one of the piles of loose gravel and was injured. Defendants had provided for daily inspection of the tracks in the yard in which plaintiff was injured. The general competency of the section men is not questioned. Proper rules for carrying on their work had been made. The section foreman testified that it was his duty to see that this track was kept clear "and if any sand or coal or anything else should fall off the train to see that it was removed. There were four men in my gang, and it was their duty under my instructions to keep this track in proper condition." He further testified:

"The proper way to keep tracks in the yard where switching is done is to keep them clear of all obstructions and keep the track level up between the ties and between the track. That is done so that there may be nothing to cause an accident while a man is switching. In that case if a man should go in front of a moving train there would be nothing to trip him."

He further testified that he had, daily, gone over the track in question and had discovered no such obstructions as the testimony for plaintiff tended to prove were there.

1. As to the negligence of defendant. It is stated in the brief of counsel for appellants:

"The question then is under such circumstances, had the defendants failed to use reasonable care to provide a reasonably safe place in which this switchman could perform his work, because of the fact that a pile of fresh gravel, which was from four to six inches high, had fallen between the rails upon a roadbed which was level, smooth and in good condition, and over which plaintiff fell and received the injury?"

And in the reply brief:

"We do not at this late day deny the principle contended for by the counsel, to sustain which, many cases

are cited that one of the positive duties of the master is to use reasonable care to provide a reasonably safe place in which servants may perform their work and that such duty is non-delegable. We say, however, this principle of law has no application to the case at bar.

" The duty of removing obstructions from the defendants' yard had been delegated to the section men. This, however, does not render them vice-principals unless the duty to be performed is what is termed a positive duty of the master. We deny that this was a positive duty."

If the removal of material which in the course of the business carried on falls from locomotives and cars upon the tracks is a mere detail of operation of the road, undoubtedly those charged with performance of the work, as the section men, are fellow-servants of those who are required to use the premises. If, on the other hand, it is or may be a work of maintenance, reference being had to the uses to which the premises are put, it is a duty of the master and he is chargeable with knowledge of what reasonable inspection would have discovered and with liability for results of failure to reasonably repair. The rule, now generally accepted, that the duty to furnish a safe place for the employé cannot be delegated for performance so as to relieve the master from responsibility and that the duty is a continuing one, is the rule of this State. The duty to maintain a safe place is one to be reasonably performed by inspection and by repair. *Van Dusen* v. *Letellier*, 78 Mich. 492; *Balhoff* v. *Railroad Co.*, 106 Mich. 606; *Anderson* v. *Railroad Co.*, 107 Mich. 591. See, also, *Nichols* v. *Railroad Co.*, 145 Mich. 643. It is, therefore, important to determine, in the case presented, whether the defect or obstruction complained about was one which a reasonable performance of the duty to maintain should have discovered and remedied. An argument is made, based upon the facts that the defect was not one of construction, was not created by defendants, was not a defect in the roadbed itself. It is true that in the cases above cited, as in *Ragon* v. *Railway Co.*, 91 Mich. 379, in *De Cair* v. *Railroad Co.*, 133

Mich. 578, and in most of the cases in which the negligence of defendant in this regard has been considered by this court, the defect was structural, and in some of them, as in the *Balhoff Case*, was directly or indirectly related to original construction. It is also true that in *Loranger* v. *Railway Co.*, 104 Mich. 80, this court, and in *Cincinnati, etc., R. Co.* v. *Mealer*, 50 Fed. 725, 1 C. C. A. 633, the circuit court of appeals for this circuit, said in the opinions rendered that it was the duty of the section men to remove such obstructions as were shown to have existed, and that they were the fellow-servants of the injured employé. But in the *Loranger Case* it is also said that "in order to bind defendant, actual notice of the obstruction must be shown, or it must have existed for such a length of time that the law will imply notice."

In the *Mealer Case*, it appeared that plaintiff struck his foot against a small piece of coke and that it was the duty of the section men to go through the yards daily and remove all obstructions, including lumps of coke and coal, from the tracks and keep them cleared up. In neither of these cases was it shown that the obstruction had existed for any considerable time, and in the *Loranger Case* the obstruction was ashes dumped from a locomotive in a forbidden place.

In *Piquegno* v. *Railway Co.*, 52 Mich. 40, it appeared that a brakeman was injured on account of an obstruction caused by accumulated ice and snow. The court considered whether the duty to keep the ground clear of ice and snow existed and was one which could not be delegated. In affirming the judgment for defendant, the court, by Mr. Justice COOLEY, said:

"It is also to be observed that these substances (ice and snow) are not the only ones that might cause a similar accident. A stick, a stone, a piece of baggage or freight lying near the track might in like manner cause a brakeman to stumble and fall, and the company at its peril must provide against the likelihood of such a casualty. So stringent a rule has never been applied to railroad companies, nor could it be without making them insurers

against a species of accident which could seldom occur without carelessness on the part of the person injured."

We are not persuaded by either the argument advanced or by the decisions last above referred to that the case is one for the application of the fellow-servant rule. The "place" in which the work of the plaintiff was performed was the yard of defendants. What the roadbed is to the train men, the surface of this yard was to plaintiff. The master had performed the duty of supplying a safe place and had appointed servants to inspect and to maintain it in a safe condition. We are required to assume that it was, at the time of the injury, an unsafe place, because of the obstruction, and, further, that if the section men had performed their duty it would not have been unsafe. It is impossible that material falling from locomotives and loaded cars, which the record shows is a common occurrence, can be, in all cases, immediately removed from the right of way. Of necessity, employés assume, in some degree, in fact and in law, the risk of injuries therefrom. It may be said to be an ordinary risk of employment in the case of a switchman whose duty it is to assist in the work of switching cars and making up trains. The controlling rule goes no further than this, that it requires on the part of the master the exercise of ordinary care and diligence to maintain the place in a condition reasonably safe for the use to which it is put. To this extent, it is a positive duty. Upon this record, we cannot say, as matter of law, that this duty had been performed.

2. For the reasons given, we think the question of assumed risk must be determined adversely to appellants' contention.

3. It is said that plaintiff was, as matter of law, guilty of negligence contributing to his injury. This is predicated upon the proven facts that he walked, or ran, in front of the moving car, in a yard in and over which large numbers of cars were daily moved, including, within plaintiff's knowledge, cars loaded with sand and

gravel and, within his experience, the probability that some of the material would fall from the cars. A rule of defendant forbade switchmen going in front of moving cars. Plaintiff testified:

" Just preceding the accident the engine had kicked a car down to the main line and I went up to this car and set the brake on it and put a red light on the tail end of it, as required by the rules, and I tried to open the knuckle on it. The knuckle was closed but jammed some way so I couldn't open it. When they kicked the other car in, I went down to meet this car. I stepped into and was in front of it trying to open the knuckle on it. While I was doing that, I stumbled over the gravel; the brake beam caught my heel, kind of threw me forward; before I could catch my balance again I was kind of jumping along trying to catch my balance. The brake beam caught my heel and my toe caught in this plank. That is the planking described by the witness Eldridge. When the brake beam brought me against the planking, the box part of the car struck my back and shoved me over."

He also testified that the car, when he went in front of it, was traveling at speed a little faster than a walk and that he could walk faster than the car was moving when he was injured; that he was in front of the car because the automatic coupler was not in proper order; that the night was dark and he carried a lantern; that he was an experienced switchman, and that it was the custom of the men to go ahead of moving cars as he did upon the occasion in question. As to the custom, he was supported by the testimony of other witnesses. While plaintiff knew that gravel had sometimes fallen from cars upon the track and had seen the section men clearing it away, he had no knowledge, so he testified, of the piles of gravel in question and affirms that but for the obstruction his going in front of the car to fix the coupler would have been a safe operation. The case upon this point cannot be distinguished from *De Cair* v. *Railroad Co.*, 133 Mich. 578.

The judgment is affirmed.

McALVAY, C. J., and CARPENTER, HOOKER, and MOORE, JJ., concurred.