C. A. TIBBITTS, Administrator, Appellant, v. MASON CITY & FT. DODGE R. R. Co., and CHICAGO GREAT WESTERN RY. Co.

**Railways:** PERSONAL INJURY: ASSUMPTION OF RISK. It is the duty 1 of a railway company to keep its switch yards and tracks in a reasonably safe condition for the use of its employés; and whether an employé assumes the risk by stepping on loose gravel between the tracks, the road being in process of construction, is held under the evidence to have been a question for the jury.

**Same:** CONTRIBUTORY NEGLIGENCE. Where the coupling device of a 2 freight car is such that when in a certain position it may be necessary for a brakeman. to expose his person to the impact of an approaching car, to make the coupling, he is not negligent as a matter of law in making the coupling in the customary manner. Evidence held insufficient to show negligence in law.

**Proximate cause.** Negligence is not the proximate cause of an in- 3 jury unless it can be said that but for such negligence the injury would not have happened.

**Negligence:** CIRCUMSTANTIAL EVIDENCE: SUFFICIENCY. While circumstantial evidence may be resorted to to establish the connection between an injury and the negligence claimed to have caused it,· such evidence must be more than merely consistent with a given theory of the accident, it must exclude any other reasonably probable theory; so that where a brakeman was killed in making a coupling and the evidence leaves the happening of the accident a mere matter of conjecture, as consistent with the theory of absence of negligence as with the negligence of the company, a verdict for the company should be directed.

*Appeal from Pottawattamie District Court.*— HON. W. R. GREEN, Judge.

FRIDAY, APRIL 10, 1908.

ACTION for damages resulted in a directed verdict for defendant, and judgment accordingly. The plaintiff appeals.— *Affirmed.*

*Clem F. Kimball,* for appellant.

*Saunders & Stuart,* for appellees.

LADD, C. J.— Daniel Clancy was killed October 27, 1903, while rendering services as a brakeman in the employment of the Mason City & Ft. Dodge Railway Company. That company was then using the rolling stock of the Chicago Great Western Railway Company, and this accounts for the two companies being joined as parties defendant. The general direction of the road is east and west, and at McClelland the house track is in front and immediately north of the depot, and beyond that is the main track. The side or switch track is south of it. The freight train pulled in from the East at about half past six o'clock p. m., stopping on the house track in front of the depot. The engine and one car were " cut off," and, after a couple of cars had been " picked up," these were being " shoved down " to the

head end of the part of the train left standing. Clancy was on the ladder on the south side near the east end of the head car being backed, and, when within the distance of the length of one car and half of another from the standing car, he stepped to the ground, and started " around in front of the moving car." The head brakeman, who was on the southwest corner of the head standing car, testified: " I saw him start around in front of the moving car. I think he was very nearly up to the rail by the looks of the lantern or stepped over the rail. I do not think he took a step after he got in front of the car." He also testified that he saw deceased carry a lantern in his right hand, and that he saw it go down to the right as he fell. Immediately thereafter the witness went "where he had been standing when his lantern fell," and " found him lying just outside the ties." His head was toward the east, and his lantern between the ties, immediately south of the rail, with bail flattened as though run over by a car wheel. The witness removed him out from the track. One Cramer was standing in the telegraph operator's room in the depot at the time, and, as the window set out somewhat, noticed Clancy's lantern as the engine backed, and saw it fly away from the car. He testified: " As I was looking out of the window, I saw a lantern on the car, and probably something else caught my eye, and I dropped my eyes, and looked up again, and saw a lantern flying away from the car. That is all I know." The conductor went to Clancy immediately upon being informed of the accident by the head brakeman, and, asking him how it happened, was told by him: " I went in to open the knuckle, and stumbled in that d—n gravel." On the second morning after the accident a witness discovered a little white wet spot on the rail near depression hereafter mentioned, and toward where the body lay, as though something had been mashed thereon. This is all the evidence bearing on the happening of the accident, save the proof of the nature of the injury. The anterior portion of the left foot across the instep and also the

leg was crushed. The attending physician testified:
" There was a bruise, the skin was not broken, extending up
the inside of the limb, just beneath the scrotum, and a severe
bruise above the hip joint, like a bloody tumor beneath the
skin. The crushed portion was from two to four inches be-
low the knee joint. The bone was broken in several frag-
ments. You could push your finger through it anywhere.
My opinion is that the force that produced this condition
caught him on the inside of the heel and had gone up, be-
cause the broken tissue was on the inner side." The leg was
amputated but the injured man survived but a few hours.
Five or six feet west from where he was found there was a
depression in the gravel extending out from the south rail
and ties, about two feet long and eighteen inches wide, with
the gravel slightly elevated at one side. This was about as
deep as the thickness of a tie according to one witness, and
about a foot deep, according to another, and the gravel had
run into it from between the ties.

   I.   The negligence alleged is the leaving of this depres-
sion in the roadbed thereby rendering the place unsafe for
the work required of deceased. That this ordinarily might
constitute negligence on the part of the com-
pany is not questioned. Defendant explains
this by saying that the roadbed was in course
of construction, and was incomplete, and the defect
was incident to such construction. Had this been con-
clusively shown, there would be ground for saying as a
matter of law that the deceased assumed the risk. But
the evidence indicated that, though the gravel was loose,
containing considerable sand, the work of ballasting the
tracks at that place had been completed, the material having
been leveled, and tamped, and the company was engaged in
filling the space between the tracks. This was done by un-
loading the gravel from the house track, and moving it out
with scrapers. One witness testified that the depression
looked as though made with a scraper, but that the surface

1. RAILWAYS: personal injury: assumption of risk.

was not rough at that place, having been smoothed some. There was no evidence that the unloading had occurred there, and another witness testified that the hole did not appear to have been made by a scraper, and that the gravel inside and outside of the rails had been leveled and surfaced all about that locality, so that it was a smooth place at which to stand or walk. The jury might then have found that the ballasting where the accident had occurred had been completed, and that, it so appearing to the employés, the defendant was negligent in leaving a hole such as that described at a point where they might reasonably expect the surface to be level. In other words, the defect was where the employés might reasonably have assumed the track to have been completed. *Chicago & E. I. Ry. Co. v. Hines,* 132 Ill. 161 (23 N. E. 1021, 22 Am. St. Rep. 515). The duty of the railroad company to keep its tracks in a reasonably safe condition for use by its employés has been sufficiently discussed in other cases. *Sankey v. Railway Co.,* 118 Iowa, 39; *Brooks v. Railway Co.,* 81 Iowa, 504; *Fish v. Railway Co.,* 96 Iowa, 702. See, also, *Hollenbeck v. Railway Co.,* 141 Mo. 97 (38 S. W. 723); *De Cair v. Railway Co.,* 133 Mich. 578 (95 N. W. 726); *Missouri P. R. Co. v. Jones,* 75 Tex. 151 (12 S. W. 972, 16 Am. St. Rep. 879). Whether deceased assumed the risk was, in view of the condition of the yard, for the determination of the jury.

II. It is also argued that, in any event, deceased must be held to have been guilty of contributory negligence. The car was equipped with a Turner coupler, which was so made

**2. Same: contributory negligence.**

that the knuckle could be opened with the lever. This lever was at the end of the car ten or twelve inches from the corner. To effect a coupling, the coupler on one of the cars must be opened, and it was the duty of the deceased to see that that on the moving car was in this condition. To do this he necessarily passed somewhat in advance or in front of the car, though not necessarily in its course. If the

knuckle is part way open, it can only be opened completely by hand. If closed, " it will be necessary to get in front of the car where a good strong pull could be put on the lever." Whether deceased was about to open the knuckle by pulling this lever or by hand no one knows. All that can be said is that he " went in to open " it. That was his purpose in stepping " around the corner " of the car. But there is no evidence in the record that at the time of the accident he was undertaking to open the knuckle by hand, or even that he had touched the lever. The other brakeman thought that he might have stepped near or over the rail, but he only judged from the location of his lantern, and, as it was the duty of the deceased to see if the knuckle was open, he would be likely to have held the lantern out toward that instrument. The most that can be said from the testimony is that he had reached a position from which to operate the lever when he fell; at least, the jury might so have found. True, he stated to the conductor that he went in, but it cannot be definitely known what he meant by this. According to the evidence, he might have referred to the mere reaching of his arm for the lever. This could have been done from outside the rail and somewhat in advance of the car, and, if he was undertaking to do it in this position, he was not necessarily negligent because this was the mode contemplated in the use of the lever. Nor was a finding that he was injured by reason of being between the cars essential. The jury might have found that his fall was caused, not by impact with the car or from going between them, but from stumbling in the gravel, and hence, if negligent in going between the cars, if he was, that this in no way contributed to his injury. *Tackett v. Taylor Co.*, 123 Iowa, 149. If, however, the jury would have found that he had assumed a position necessary in working the coupler with which the defendant had equipped its cars and was performing this duty in the usual and customary way, in undertaking to

operate it he was not negligent. *Spaulding v. Railway Co.,* 98 Iowa, 207; *Pierson v. Railway Co.,* 127 Iowa, 13. As held in the last case, the employé is at fault in going between the cars when this is unnecessary owing to the coupler equipment; but, where the latter is of such a character that, in order to operate it in opening the knuckle, the employé necessarily exposes his person to the danger of impact with the approaching car, that case is direct authority for saying that he is not negligent as a matter of law in undertaking to perform his task in the usual and customary way. See *Sankey v. Railway Co., supra.*

III. The troublesome question in the case is whether the depression in the bed was the proximate cause of the injury. Negligence cannot be found to have been the proximate cause unless it can be said that, but for such negligence, the injury would not have happened.

3. PROXIMATE CAUSE.

As seen, the jury might have found that deceased was at the corner of the car when he fell; and, on the other hand, it might have concluded that he stepped inside of the track. Had one or both of his feet been inside of the track, this might have explained the nature of the injury received, for he might so have fallen as to have bruised his hip and the inside of his left leg, as disclosed by the evidence, and thereafter drawn his leg over the rail so that only the lower portion was crushed by the wheel. The position of the lantern tends to confirm this theory. True, the road had been leveled between the tracks, but as the gravel had been recently placed, it was loose, and he might have stumbled inside or outside of the rail. On the other hand, as contended by the appellant, he might have been outside of the rail in the position his duty required him to be, and have stumbled in the gravel, and have fallen with his face in an easterly direction, for his lantern was seen to go to the south. Appellee lays stress upon the statement of a wit-

4. NEGLIGENCE: circumstantial evidence: sufficiency.

ness that he fell south and east, but the witness did not pretend to have seen him, and was judging from the situation of his body when found and the movement of the light. It is a pure matter of conjecture how he fell and where he was immediately before his fall. No one can tell whether he stepped in the depression described and swung out as contended by the appellant, or whether he stumbled between the cars by reason of his foot sinking in the loose gravel between the ties. His statement immediately after the injury tends to indicate the latter, although not conclusively. Were there any evidence in the record that he fell from stepping in a hole, then the proof of the existence of this depression, in the absence of any showing of any other in the vicinity, might have warranted the inference that this was the one which caused his injury, and brought the case within the rule of *Brownfield v. Railway Co.,* 107 Iowa, 258, where it was announced that "when a cause is shown which might produce an accident in a certain way, and an accident happens in that manner, it is a warrantable presumption, in the absence of showing other cause, that the one known was the operative agency in bringing about the result." See also, *Degelau v. Wright,* 114 Iowa, 52. But the evidence does not disclose how the accident happened, save the cause. The case is governed by the principle announced in *Asbach v. Railway Co.,* 74 Iowa, 248, and approved in numerous cases since: "A theory cannot be said to be established by circumstantial evidence even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent merely with that theory, for that may be true, and yet they may have no tendency to prove the theory." The only direct evidence is the declaration of the deceased that he went in to open the knuckle and he stumbled in the gravel, so that the plaintiff must necessarily rely upon circumstantial

evidence to determine how the accident occurred save the mere fact of stumbling. In *Neal v. Railway Co.*, 129 Iowa, 5, the above rule is quoted with approval, and it is said that, " if other conclusions may as reasonably be drawn as to the cause of the injury from facts in evidence than that contended for the evidence does not support the conclusions sought to be drawn from it. Verdicts must have evidence to support them, and the jury will not be permitted merely to conjecture how the accident occurred. . . . If it appears that the facts and circumstances from which a conclusion is sought to be deduced, although consistent with that theory, are equally consistent with some other theory, they do not support the theory contended for." To the same effect, see *O'Connor v. Railway Co.*, 129 Iowa, 636.

The casual connection between the injury and the negligence of the defendant may be proved by direct or circumstantial evidence, but the evidence, such as it is, must be something more than consistent with the plaintiff's theory of how the accident occurred. It must be such as to make that theory reasonably probable, not simply possible. In the case before us the explanation of the accident urged by defendant — i. e., that deceased was between the cars — and must have stumbled because of the looseness of the gravel — is quite as consistent with the proof, and fits in with the other facts quite as reasonably as that of plaintiff, to the effect that, in walking along, he must have stepped into the depression, been thrown or swung around, and fallen forward. If so, then it is a mere matter of conjecture how it all happened, and the evidence is quite as consistent with the theory that it resulted from another cause than the negligence of defendant, as that there was casual connection therewith. This being so, the court rightly directed a verdict for the defendant.— *Affirmed.*