JOSEPH HARN, Appellee, v. CEDAR VALLEY ELECTRIC COMPANY, Appellant, et al.

**TRIAL:** Instructions—Applicability to Evidence—Warning as to
1  Danger—Negligence. Evidence tending to show that a workman was warned of the existence of a danger attending his place of work does not justify an instruction which submits to the jury the question whether the workman was "instructed not to work in the place in question."

**NEGLIGENCE:** Acts Constituting Negligence—Trespasser. A
2  workman who has been warned of a possible danger attending the pursuit of his task does not become a trespasser by continuing his work, especially when he was in no wise subject to the direction of the one giving the warning.

**NEGLIGENCE:** Contributory Negligence—Conflict of Evidence.
3  Conflicting testimony as to whether a workman was warned of

the danger attending his work necessarily presents a jury question as to the real fact.

**TRIAL:** Verdict—$4,000—Excessiveness—Personal Injury. Verdict of $6,000, reduced by the trial court to $4,000, sustained. Plaintiff, 20 years old, and married, was injured by coming in contact with wires carrying 2,300 volts of electricity. He was apparently dead when picked up, suffered excruciating pain, which was later aggravated by an attack of tetanus, and was confined to his bed for several weeks. He was incapacitated from working at his trade as a painter, and from doing any hard work. Prior to his injury, he was earning $2.50 per day. Probability and extent of permanent injury were problematical.

*Appeal from Butler District Court.*—M. F. EDWARDS, Judge.

DECEMBER 11, 1917.

ACTION for damages. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*N. R. Lovrien, W. T. Evans,* and *Edwards, Longley, Ransier & Smith,* for appellant.

*E. H. McCoy* and *E. R. O'Brien,* for appellee.

STEVENS, J.—I. The defendant Cedar Valley Electric Company, a corporation, having its principal place of business at Charles City, Iowa, also owns and operates an electric power plant at Parkersburg, Iowa, and, at the time of the injury complained of by plaintiff, furnished light and power to the defendant Electric Roller Mills, a copartnership, composed of George Johnson and W. S. Meade, to run a motor in said mill. The main power plant and dynamos of defendant Electric Company were located about 80 feet from the mill. Three electric wires, carrying 2,300 volts of electricity, were stretched from said power plant to a crossarm fastened to the west end of the mill. The wires were attached to insulators on a cross-arm. In making the connection of the wires to the insulator, the ends of the wires were exposed and the insulation so torn and worn away as to leave the same bare and unprotected. From these

insulators, wires encased in a metal pipe extended downward along the outside of the west end of the mill to a point below where they entered the wall thereof and connected with the motor therein installed. The wires were covered with "weather proof" insulation, which is ordinarily used on ordinary wires carrying ordinary voltage, and, it appears from the testimony, was not sufficient to prevent the escape of electricity from a wire carrying 2,300 volts. Plaintiff, a married man about 20 years of age, was employed by John Keneppe, a contractor, who had arranged with the defendant Johnson to paint the mill, and, while working thereon and painting in the immediate vicinity and around said wires, was severely injured by his wrist's coming in contact with the exposed ends of the wires. The nature and extent of plaintiff's injuries and the manner in which same were received are hereinafter fully stated. The jury returned a verdict in favor of plaintiff for $6,000. A motion for new trial was filed, and the court held that the verdict was excessive, and reduced same to $4,000, which plaintiff elected to accept, and judgment was rendered therefor.

Several grounds of negligence were alleged in plaintiff's petition; but, as no question is presented upon this appeal involving the same, it is unnecessary to set them out in detail. Defendant for answer admitted the corporate capacity of defendant Electric Company, and that it owned and operated a plant at Parkersburg, and owned the wires in question, and furnished the current to the mill; and averred that the said wires were properly and efficiently constructed, according to the general and accepted standards of electrical construction, and that same were, at the time of the injury, in good repair; and denied the remaining allegations of plaintiff's petition. The cause was tried against the defendant Cedar Valley Electric Company only, the other defendants having been granted separate trial, and the cause continued as to them.

George Johnson, one of the defendants,

**1. TRIAL: instructions: applicability to evidence: warning as to danger: negligence.**

testified that, when he observed plaintiff start to paint the west end of the mill, he said to him, in substance:

"When you get over to these wires, I would rather you would leave a strip; they told me that the wires was safe, but there is no use in taking any chances, and I would rather you would leave a strip, and then Jerry and I will paint that some time when the current is off, on Sunday."

He also testified that he made substantially the same statement to James Deo, Sr., who was apparently in charge of the work for the contractor, in the presence of his son and plaintiff, to which statement Mr. Deo responded: "I will keep on warning the boys." James Deo, Sr., testified that he told his son that he would rather paint around the wires himself, and for the latter to keep away from them. He testified, however, that he did not know positively whether Harn heard him say that or not; that his son was nearer to him than Harn, who was some distance away. James Deo, Jr., testified that he did not remember hearing his father say anything about the wires' being dangerous. Plaintiff testified:

"No one told me that it was dangerous to work near the wires or warn me of any danger with reference to the wires. I have never had any experience with electricity."

Another witness, an employe of defendant mill company's, corroborated the testimony of Mr. Johnson.

**2. NEGLIGENCE: acts constituting negligence: trespasser.**

Based upon the foregoing testimony, counsel for defendant requested the court to instruct the jury, in substance, that, if it found from the evidence that plaintiff was instructed not to paint around the wires but to leave that portion of the mill unpainted, then plaintiff, in painting same, was a trespasser, acting beyond the

scope of his authority, and could not recover, under the evidence. The court, however, refused the requested instruction, and instructed the jury that plaintiff was lawfully at work painting the mill at the time of the injury, and further told the jury that plaintiff had no right to work about the wires attached to said mill if the place where same were attached, or the wires, were obviously dangerous; but that the mere fact that plaintiff may have known that the place was dangerous would not in itself deprive him of the right to recover, if his injury resulted from the negligence of defendant, and without negligence upon his part contributing thereto. The record shows that plaintiff was not at the time employed by Johnson, but by an independent contractor, and he was not, therefore, under the direction of Johnson. *Callahan v. Burlington & M. R. R. Co.*, 23 Iowa 562; *Healy v. American Tool & Machine Co.*, (Mass.) 107 N. E. 977; *Hannah v. Connecticut River R. Co.*, (N. H.) 28 N. E. 682.

No other instruction was asked by defendant, nor were exceptions taken to any of the instructions given by the court. The requested instruction was too broad, and was not justified by the evidence. What, if anything, was said by Johnson to plaintiff, or heard by him, or any warning given by James Deo, Sr., of any risk or danger involved in painting the mill in the immediate vicinity of, or around, the wires, were questions of fact for the jury. The language claimed to have been used by the defendant Johnson was doubtless intended as a warning, rather than a direction to plaintiff not to paint in the vicinity of the wires, and seems to have been so understood by James Deo, Sr., who, as above stated, replied that he would keep warning the boys. The evidence, of course, was material, and had a direct bearing upon the question whether plaintiff's injuries were the result of negligence upon his part, but did not justify the court in saying to the jury that, if it believed

said evidence, plaintiff was a trespasser and could not re-
cover. The instruction was properly refused by the court.

II. It is also urged by counsel for ap-

**3. NEGLIGENCE:
contributory
negligence:
conflict of
evidence.**

pellant that plaintiff disobeyed the positive
direction of the defendant Johnson by paint-
ing in the immediate vicinity of and around
the wires, and was, therefore, guilty of con-
tributory negligence. What has already been said sufficient-
ly covers the evidence relied upon by appellant to establish
contributory negligence. If plaintiff received warning of
the dangerous character of the wires and the risk incident to
working in the immediate vicinity thereof, as claimed by
the witnesses and denied by him, it was a question of fact
for the jury, under the evidence, to say whether or not he
was guilty of contributory negligence. That question was
submitted to the jury by instructions apparently satisfac-
tory to counsel, as no exception was taken thereto, and its
finding is conclusive upon this point.

III. The principal ground, however,

**4. TRIAL: ver-
dict: $4,000:
excessiveness:
personal in-
jury.**

relied upon by appellant for reversal, is that
the verdict of the jury was excessive, and
so large as to indicate that same was the re-
sult of passion and prejudice, and, therefore, defendant's
motion for a new trial should have been sustained by the
court. Plaintiff testified that, at the time of the injury,
he was working on a 16-foot ladder, near the wires and
about even with them; that he was painting up and reached
over the wire to finish painting around them; that he had
one foot on a rung of the ladder above the other, and his
wrist came in contact with the wire, and one leg with the
lead cable covering the wires.

James Deo, Sr., testified that he heard the flash of the
electricity on plaintiff's arm; that plaintiff's face was per-
fectly black; that his eyes bulged out of his head, and that
his tongue stuck out an inch or more from his mouth; that

he fell to the ground, and appeared to be dead.   Plaintiff was taken to a doctor's office, from which he walked home, and was attended by a physician for about a week.   Plaintiff further testified that the first recollection he had after the injury was when he woke up at about 4 o'clock in the afternoon; that, immediately following the injury, he felt a burning or smarting sensation in his wrist, after which the same pained him severely; that in a few days his leg became sore where same had been burned, and pained him considerably; that he was very nervous, irritable, could not sleep, had very severe headaches much of the time, suffered pains in his back and groin, which, most of the time, were severe, had no appetite, and was sick at his stomach all the time.   He remained in bed about a week, when his condition became improved, and, after being around for a few days, suffered a very severe attack of tetanus, or lockjaw. Concerning his condition at that time, he testified as follows:

"I took to my bed about a week from the Monday that I got hurt.   I was in bed a week after the accident; that is, laying down, anyway.   I was in bed a week, and then up around for about a week, and then went down again to bed. I laid flat on my back, you might say, for three weeks in bed; I couldn't turn over unless they helped me, and if I did turn over, then my head would draw back and pain worse than otherwise.   It would draw back so that my feet and my head would be all that would touch the bed.   I was stiff and rigid in my body.   When they tried to turn me in some other position than on my back, my head would draw back worse than ever; I couldn't stay or be placed in any other position.   Only my feet and head touched the bed; nothing else.   I was in that condition about a week, and then part of it, to that extent, left.   I couldn't open my mouth, for one thing.   Didn't have anything to eat

except broth or soup, and nothing to drink except a little water to moisten my mouth and throat, and these they had to give me with a spoon. It was about three weeks before I could open my mouth. My bowels would not work. I was not able to get my hands to my mouth."

During the time he had lockjaw, he had two severe spasms, during which time he lay on his back, his body so rigid that only his head and feet touched the bed. He further testified that he suffered more or less from sleeplessness for a long time; that, at the time of the trial, his wrist pained and hurt him; that he also had pains in his arm near the elbow and in his shoulder; that he had no grip in his fingers; that he had been unable to work at his trade since the injury, or to do other hard work; that, at the time of the injury, he was receiving $2.50 per day. The physicians who attended him testified that, during the time he had lockjaw, the muscles of his body were rigid; that he apparently suffered severe pain; that he had two severe spasms; that the rigid condition of his body continued for about three weeks; that his body was so stiff during said time that, by placing the hand under his head, he could thereby be raised to a perpendicular position; that he was unable to turn over in bed without help; that he had no use of his muscles, could not control the same or any member or part of his body.

It appears to be practically conceded that tetanus resulted from some infection of the wound on plaintiff's wrist. The medical witnesses were quite uncertain as to the probability and extent of plaintiff's permanent injuries, if any; although they all agreed that the burn on his wrist was severe, and a large scar had formed thereon; and they stated that he might suffer some permanent impairment of the use of his hand, due to the injury to the tissue surrounding the tendons that move the fingers. The extent of such

impairment, however, could not be ascertained until the scar had completely formed on the wrist. None of the witnesses expressed the opinion that he was likely to suffer any serious permanent injury or impairment of the use of his hand or finger. All agreed that no necessary permanent impairment or injury followed lockjaw.

The court reduced the verdict from $6,000 to $4,000. The verdict was, no doubt, rather large, but plaintiff suffered a severe and painful injury, and, during the time he was afflicted with tetanus, excruciating pains; and while the probability is, as appears from the testimony of the medical witnesses, that he will suffer little, if any, permanent damages from said injury, yet none of them testified that he would not suffer to some extent, or that his hand would be as strong and sound as before, while plaintiff testified that he had been unable to follow his trade or do other substantial labor since his injury. He has lost time and incurred medical expenses to a considerable amount. We have carefully gone over the record, and do not feel inclined to say that the verdict was so large as to indicate passion and prejudice on the part of the jury, and the judgment for $4,000 will not be interfered with.—*Affirmed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.